# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2636EM

_____

| | | |
|---|---|---|
| Dinesh Keshavi Shah, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court  for |
| | * | the Eastern District of |
| Janet Reno, Attorney General of the | * | Missouri. |
| United States, Immigration & | * | |
| Naturalization Service, Doris Meissner, | * | |
| Commissioner, and Chester S. Moyer, | * | |
| Officer in Charge, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: January 13, 1999

Filed:  July 1, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and BRIGHT, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


In this case we are called on to decide important questions of the jurisdiction of the federal courts to review decisions of the Executive Branch with respect to immigration.  Two statutes enacted in 1996 have narrowed the rights of certain classes of immigrants and restricted the jurisdiction of the federal courts to review claims

raised by those immigrants. The two statutes are the Anti-terrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, 1268, 1276-77, enacted on April 24, 1996, and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546, enacted on September 30, 1996, as amended by the Act of October 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656. We hold that these two statutes do not entirely preclude review on federal habeas corpus of pure questions of law raised by certain lawful permanent residents who are in custody under a final order of deportation. We reach this conclusion partly in order to avoid a difficult question of constitutionality under the Suspension Clause of the Constitution, Article I, Section 9, Clause 2.

I.

The petitioner in this case is Dinesh Keshavi Shah. He is a lawful permanent resident of the United States, but he is deportable, and concedes this status, by reason of criminal convictions of an aggravated type. He claims that he has a statutory right to be considered for a waiver of deportability under Section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c)(1994). The government claims that this statute no longer affords Mr. Shah any chance for discretionary review that might lead to a waiver, because, with respect to immigrants who have suffered his kind of criminal convictions, Section 440(d) of AEDPA, 110 Stat. at 1277, has eliminated any discretion that the Attorney General previously had with respect to deportable aliens. On the merits, the question comes down to this: is AEDPA Section 440(d) retroactive, in the sense that Congress intended it to apply to aliens with respect to whom deportation proceedings had, on the date of the enactment of AEDPA, already been commenced. The Attorney General's answer to this question is yes. See Matter of Soriano, Interim Decision 3289, 1996 WL 426888 (Op. Att'y Gen. June 27, 1996). The District Court[1]

---

[1]The Hon. Steven N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

held that it had jurisdiction to answer this question in a habeas proceeding brought by Shah, and, on the merits, held, in accordance with Shah's contention, that Section 440(d) is not retroactive. The Attorney General appeals, and we affirm.

The questions presented by this case have been much discussed in published opinions of district courts and courts of appeals. For this reason, we need not detail our own analysis quite so much as if we were deciding a question of first impression. Most, if not all, of the arguments on both sides have been made and discussed in detail in previous opinions. These cases have gone both ways, both with respect to jurisdiction and on the merits. Generally speaking (there are numerous qualifications and refinements which we do not pause to describe) the First, Second, Third, Ninth, and Eleventh Circuits have declared themselves in favor of habeas jurisdiction under 28 U.S.C. § 2241, Goncalves v. Reno, 144 F.3d 110, 121 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999); Henderson v. Immigration and Naturalization Service, 157 F.3d 106, 112 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999); Sandoval v. Reno, 166 F.3d 225, 234-35 (3rd Cir. 1999); Magana-Pizano v. Immigration and Naturalization Service, 152 F.3d 1213, 1221 (9th Cir. 1998), vacated on other grounds, 119 S. Ct. 1137 (1999); Mayer v. Immigration and Naturalization Service, __ F.3d __, 1999 WL 317121 (11th Cir. May 20, 1999), while the Seventh Circuit is on the other side. LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998). On the merits, the question of the retroactivity of Section 440(d), the First, Second, Third, and Eleventh Circuits favor the petitioner, Goncalves, 144 F.3d at 113; Henderson, 157 F.3d at 129; Sandoval, 166 F.3d at 241-42; Mayer, __ F.3d at ___, 1999 WL 317121 at * 10-11. Although the Seventh Circuit did not definitely reach the issue, having found no jurisdiction under the petition, it indicated that it would favor the government. LaGuerre, 164 F.3d at 1041.

We set out enough of the history of judicial jurisdiction over matters of immigration to make our conclusions intelligible. For a long time, habeas corpus was the customary method for obtaining review of deportation decisions. What is now the

general habeas corpus statute, 28 U.S.C. § 2241, was available for this purpose. Among other things, the statute gives jurisdiction to the district courts to grant writs of habeas corpus to persons who are in custody under the authority of the United States in violation of the Constitution, laws, or treaties of the United States. The statute has a venerable history. It dates from the Judiciary Act of 1789, 1 Stat. 73, 81-82. The remedy was available to consider not only constitutional claims, but claims of statutory right as well. E.g., Goncalves v. Reno, 144 F.3d at 124. Then, in 1952 and again in 1961, Congress began to channel review of deportation matters into the courts of appeals. After 1961, most such cases went exclusively to the courts of appeals, though a residual habeas jurisdiction was expressly acknowledged at Section 106(a)(10) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(10). As a general rule, habeas corpus, during this period, was available only when direct appellate review in a court of appeals was, for some reason, not open to a petitioner. See e.g., Daneshvar v. Chauvin, 644 F.2d 1248, 1250 (8th Cir. 1981). Under this regime, a person in Shah's position, concededly deportable but desirous of obtaining discretionary relief under Section 212(c), could file a petition for review in a court of appeals following a final order of deportation, and the court would review not only questions of law, constitutional or statutory, but also issues of discretion and fact, the latter under a narrowed standard of review.

In 1996, the system changed. First, on April 24, 1996, the Congress enacted AEDPA, containing both jurisdictional limitations (including the explicit repeal of old Section 106(a)(10)) and a provision (Section 440(d) of AEDPA) excluding aliens convicted of certain offenses from eligibility for discretionary relief. IIRIRA followed five months later, further refining and tightening the system. Most of the parties' arguments in the present case center around Section 242(g) of the new Immigration and Nationality Act, 8 U.S.C.A. § 1252(g) (West 1999), a provision added by IIRIRA. This provision reads as follows:

EXCLUSIVE JURISDICTION - Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The phrase "[e]xcept as provided in this section" refers to provisions appearing elsewhere in new Section 242 under which review is confined exclusively to the courts of appeals. If read literally and without regard to possible constitutional problems, new Section 242(g) appears to support the government's position. It insulates from review by any court (except as provided elsewhere in new Section 242) any decision of the Attorney General "to commence proceedings, adjudicate cases, or execute removal orders . . .." In the absence of guidance from the Supreme Court, we might have thought, and both sides in the present case did think, that the phrase "commence proceedings, adjudicate cases, or execute removal orders" was intended to include the generality of deportation matters, including final orders of deportation. Under this interpretation, if Section 242(g) were the only applicable statute, and, if there were no constitutional doubts, the government would prevail. The Supreme Court has held, however, in a decision filed after the oral argument in this case, that Section 242(g) does not apply to final orders of deportation. The words "commence proceedings, adjudicate cases, or execute removal orders" refer to separate and discrete actions in the deportation process. The Section has nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders. Reno v. American-Arab Anti-discrimination Committee, 119 S. Ct. 936, 943 (1999). Section 242(g) therefore has nothing to do with the present case, in which review is sought of a final order of deportation.

Two other provisions of IIRIRA are also cited by the government and, on their face, appear to be relevant. They are Sections 242(a)(2)(C) and 242(b)(9) of the new

Immigration and Nationality Act, 8 U.S.C.A. § 1252(a)(2)(C), (b)(9) (West 1999). The first of these two sections negates all judicial review of final orders of removal (the new name for deportation in this context) against an alien convicted of certain offenses. The second of the two provisions limits judicial review in any removal matter to final orders, jurisdiction to review which is lodged exclusively, by another provision, in the courts of appeals. Neither of these two provisions, however, applies to the present case, because Mr. Shah falls within a class of immigrants whose cases are governed by the transition rules of IIRIRA, Section 309(c)(4), 110 Stat. at 3009-626-27. If deportation proceedings were commenced before April 1, 1997, and a final order of deportation entered on or after October 1, 1996, both of which conditions Mr. Shah satisfies, the new rules enacted by IIRIRA, including Sections 242(a)(2)(C) and 242(b)(9), cited above, have no application. Instead, judicial review is governed by IIRIRA Section 309(c)(4)(G), 110 Stat. at 3009-626-627 (not codified; for the text see note following 8 U.S.C.A. § 1101(West 1999)). This subparagraph (G) provides simply that "there shall be no appeal permitted in the case of an alien who is . . . deportable by reason of having committed" certain criminal offenses, a list including those of which Mr. Shah has been convicted. Thus, in the present case, "appeal" is clearly and explicitly made unavailable. By "appeal," we take it, Congress meant ordinary appellate review, initiated by a notice of appeal or a petition for review, in the courts of appeals.

Petitioner here, of course, has not filed an appeal. He is not seeking direct review in this Court of a decision of the Attorney General, or of the Board of Immigration Appeals, to deport him. He sought habeas corpus in the District Court, and the case is before us on appeal from that court's grant of the writ. Section 309(c)(4)(G) of IIRIRA says nothing about habeas corpus. The government relies, instead, on Section 401(e) of AEDPA, 110 Stat. at 1268, which repealed the habeas corpus jurisdiction in old Section 106(a)(10) of the Immigration and Nationality Act. This statute, however, says nothing about the general habeas corpus statute, 28 U.S.C. § 2241. Old Section 106(a)(10) is expressly repealed, but what about the general

habeas jurisdiction enacted by the First Congress and, necessarily, contemplated in some fashion by the Framers when they wrote the Suspension Clause? Here, petitioner invokes the traditional canon of interpretation (if that is what it is) that habeas corpus cannot be repealed by implication. There being no express reference in AEDPA to Section 2241 of the Judicial Code, he says, this remedy must necessarily survive. Otherwise, difficult questions under the Suspension Clause would arise, and statutes are, so far as reasonably possible, to be construed to avoid such questions.[2]

---

[2]It might be thought that Section 440(a) of AEDPA, 110 Stat. at 1276-77, also supports the government's position. This statute provides as follows:

(a) Judicial Review- Section 106 of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)(10)) is amended to read as follows:

"(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court."

This language, apart from any argument that it omits a specific reference to Section 2241, would clearly support the government's position, if it were still applicable. In our view, however, petitioner's case is governed by the later-enacted and more specific transition rules of IIRIRA Section 309(c)(4). As we have already noted, subparagraph (G) of that section provides only that "there shall be no appeal." It does not say that final orders of deportation "shall not be subject to review by any court." The present case, to repeat, is not about whether petitioner can appeal from an order of the Immigration and Naturalization Service. It is about whether he can secure review by habeas corpus in a district court, and the relevant provision on that point is AEDPA Section 401(e), repealing old Section 106(a)(10) of the Immigration and Nationality Act, not AEDPA Section 440(a), which has been superseded by the IIRIRA transition rules.

And so we come to what we take to be the crucial issue: does repeal of the specific habeas jurisdiction created by the old Immigration and Nationality Act repeal all habeas jurisdiction?  Good arguments are made on both sides, but we think the answer is no.  The writ of habeas corpus, as it was known to the Framers, "was largely a remedy against executive detention." Swain v. Pressley, 430 U.S. 372, 386 (1977) (Burger, C.J., concurring).  Further, habeas corpus, as it was known to the common law, had nothing to do with constitutional matters, because England had no (formal) constitution.  The Framers, of course, were creating a constitution for this country, but it makes little sense to suppose that their reference to habeas corpus was intended to exclude review of any detention merely illegal, and not unconstitutional.  Thus, when it is said that the Suspension Clause was intended to preserve the "constitutional" writ, this phrase, we think, does not mean that the Framers thought that only constitutional questions would be open on habeas.  It means, instead, that the core of the writ, the aspect of the remedy protected against suspension, would be limited to those kinds of questions normally reviewable on habeas at the time the Constitution was written.  Those questions, we think, pretty clearly included statutory issues.  It is suggested that a further limitation is relevant here:  that habeas corpus, whether raising statutory or constitutional claims, was limited to issues of jurisdiction.  See, e.g., LaGuerre v. Reno, 164 F.3d 1035, 1038 (7th Cir. 1998).  Certainly it is true that statutory enlargements in the scope of the writ are not necessarily protected from repeal or withdrawal by the Suspension Clause.  But we cannot agree that the writ, as originally conceived by the Framers, was limited to questions that today would be labeled "jurisdictional" when the petitioner is in custody pursuant to an executive order.  See Developments in the Law - Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1043-45 (1970).

In any event, the question is sufficiently serious to persuade us to avoid it by interpreting AEDPA not to repeal general habeas jurisdiction. 28 U.S.C. § 2241. Such an interpretation involves no difficult verbal gymnastics, certainly none more difficult than those resorted to by the Supreme Court in Felker v. Turpin, 518 U.S. 651, 660-61 (1996), construing another provision of AEDPA to leave unaffected the Supreme

-8-

Court's "original" jurisdiction in habeas. AEDPA rather pointedly refers only to Section 106(a)(10) of the old Act. No reference is made to the general federal habeas corpus statute, though that statute was for decades routinely used to review executive decisions in immigration matters (review which included many statutory questions, and was clearly not limited to constitutional issues). In sum, we hold that Congress in enacting AEDPA and IIRIRA in 1996, did not clearly and expressly repeal 28 U.S.C. § 2241. Personal liberty, even the liberty of a non-citizen, is precious. That is the reason why habeas corpus is mentioned in the express words of our original Constitution. The pretension, by an official of the Executive Branch, that someone can be imprisoned without review by any outside authority is one we are reluctant to accept. It is exactly for this reason that the law requires Congress, if it wishes to accomplish any such result, to say so in terms. It has not done so here.

## III.

And so we come to the merits. Did Congress intend AEDPA Section 440(d)'s restrictions on Section 212(c) relief to apply retroactively to persons in Shah's position? The question is one of "pure" law, so to speak: it involves no expertise, no application of administrative experience to a technical subject. It is the sort of question courts decide all the time. Accordingly, it is difficult for us to see why the Attorney General's construction of the statute is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). In any event, whether Chevron deference is appropriate or not, we agree with those courts that have held Section 440(d) inapplicable to persons with respect to whom deportation proceedings had already been commenced. The question has been discussed at length, and we see no reason to encumber the books with repetitious analysis. See Henderson v. Immigration and Naturalization Service, 157 F.3d 106, 128-30 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999); Goncalves v. Reno, 144 F.3d 110, 126-33 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999); Mayer v. Immigration and Naturalization

Service, __ F.3d __, 1999 WL 317121 at * 10-11 (11th Cir. May 20, 1999). We find the <u>Henderson</u>, <u>Goncalves</u>, and <u>Mayer</u> analyses persuasive.

IV.

We agree with the District Court on both points involved in this case: the Court had jurisdiction over Shah's petition for habeas corpus under 28 U.S.C. § 2241, and the Court correctly held that Section 440(d) of AEDPA does not apply to Shah's case. This does not mean that Mr. Shah will necessarily escape deportation. It means only that he has a statutory right to be considered for discretionary relief under Section 212(c) of the old Immigration and Nationality Act. As to whether the new provisions of that Act, as added by IIRIRA, exclude all judicial review, including habeas corpus, in other cases, we express no view. Our opinion is limited to those who, like Mr. Shah, fall within IIRIRA's transition rules.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.