NIEMEYER, Circuit Judge,
dissenting:
Abdul Jaghoori, a native and citizen of Afghanistan and a lawful permanent resident of the United States since 1989, was convicted of at least two crimes involving moral turpitude while residing in Virginia — a 1995 conviction for credit card theft and a 2010 conviction for prescription fraud. He concedes that the two convictions render him removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Jaghoori seeks discretionary relief from his order of removal with his application for, among other things, cancellation of removal under 8 U.S.C. § 1229b(a). That section authorizes the Attorn’ey General to cancel a lawful permanent resident’s removal if the resident:
(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
(2) has resided in the United States continuously for 7 years after having been admitted in any status, and
(3)has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a) (emphasis added).
The BIA denied Jaghoori’s application for cancellation of removal because he was unable to show, as required by § 1229b(a)(2), that he had resided in the United States as a lawful permanent resident “continuously for 7 years.” Under the “stop-time rule” of § 1229b(d)(l), his 1995 conviction for credit card fraud cut off the running of the seven-year residency period short of seven years, because it would have rendered him ineligible for admission into the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Jaghoori noted, however, that his 1995 conviction preceded the effective date of the stop-time rule, which was enacted in 1996 as part of Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRI-RA”), Pub.L. No. 104-208, 110 Stat. 3009 (codified as amended in scattered sections of the U.S.Code). Jaghoori maintained therefore that applying the rule in his case would give it impermissible retroactive effect. The BIA rejected this argument, explaining:
[W]hen assessing statutory eligibility or discretionary merit for a grant of cancellation of removal, we ... necessarily look at a variety of antecedent events, including events that are both favorable and unfavorable to the alien, and ... an alien’s past criminal conduct may well impact on the operation of the statute, but only to the extent of defining the authority to grant discretionary relief to removable aliens.
* * *
[W]e find that it is the respondent’s choice to engage in illegal conduct [underlying his 2010 conviction] after the effective date of the new law (ie., the IIRIRA), that subjects him to the new and less generous legal regime (ie., the *775 application of the stop-time rule), not a past act that he is helpless to undo up to the moment the Government finds him out.
A.R. 16-17 (internal quotation marks omitted).
On appeal, Jaghoori again presses his argument that applying the 1996 stop-time rule of § 1229b(d)(l) (effective April 1, 1997) to his 1995 conviction in order to deny his 2011 application for cancellation of removal “attaches new legal consequences to [his] 1995 guilty plea, and, as such, [the rule] should not be applied retroactively,” citing Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
Because the legal consequence on Jaghoori’s immigration status only attached once Jaghoori committed a second crime 13 years after IIRIRA’s enactment, I believe that the BIA got it right. Therefore, I would reject Jaghoori’s argument and affirm the BIA’s ruling.
In Landgraf, the Supreme Court laid out a two-part test for determining whether a statute applies retroactively. First, a court must “determine whether Congress has expressly prescribed the statute’s proper [temporal] reach.” Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. “If so, this is the end of the analysis and there is no need ‘to resort to judicial default rules.’ ” Appiah v. INS, 202 F.3d 704, 708 (4th Cir.2000) (quoting Landgraf, 511 U.S. at 280, 114 S.Ct. 1483). But if the statute fails to define expressly its temporal reach, the court must determine whether the statute would have an “impermissible retroactive effect.” INS v. St. Cyr, 533 U.S. 289, 320, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Any retroactive effect is impermissible absent “clear congressional intent favoring such a result.” Landgraf, 511 U.S. at 280, 114 S.Ct. 1483; see also St. Cyr, 533 U.S. at 316, 121 S.Ct. 2271.
Because I agree with the majority that Congress did not expressly prescribe the stop-time rule’s temporal reach, I too would resolve this case under Landgrafs second step, determining whether the statute has a retroactive effect on Jaghoori’s 1995 conviction.
A statute does not operate retroactively “merely because it is applied in a case arising from conduct antedating the statute’s enactment,” or because it “upsets expectations based in prior law.” Landgraf, 511 U.S. at 269, 114 S.Ct. 1483. Rather, a statute has retroactive effect when it “attaches new legal consequences to events completed before its enactment,” id. at 270, 114 S.Ct. 1483, by “[1] tak[ing] away or impairing], vested rights acquired under existing laws, or [2] creating] a new obligation, imposing] a new duty, or attaching] a new disability, in respect to transactions or considerations already past,” id. at 269, 114 S.Ct. 1483 (emphasis added) (quoting Soc’y for the Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 761 (C.C.D.N.H.1814) (No. 13,156)). Because the Supreme Court made clear in Fernandez-Vargas v. Gonzales, 548 U.S. 30, 44 n. 10, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006), that cancellation of removal is not a vested right — i.e., “a term that describes something more substantial than inchoate expectations and unrealized opportunities” — IIRIRA would only have a retroactive effect on Jaghoori if it created a new obligation or attached a new disability to his prior conduct. And this judgment must “be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.” St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271 (quoting Martin v. Radix, 527 U.S. 343, 358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999)) (internal quotation marks omitted).
The majority asserts that the stop-time rule attached a new disability to Jaghoori’s *776 1995 conviction by preventing him from accruing additional years of continuous residence. But the seven-year period of continuous residence is significant only for one purpose — obtaining discretionary relief from removal. In 1995, Jaghoori had no need for this discretionary relief, as his 1995 conviction did not change his status as a lawful permanent resident or render him deportable. Nor did he need such relief on April 1, 1997, when IIRIRA went into effect, because, as the majority acknowledges, Jaghoori’s “status as a lawful permanent resident remained secure even after Congress enacted IIRIRA in 1996.” Ante, at 768. His eligibility for cancellation of removal and the attendant seven-year residency requirement became relevant only after he committed the prescription-fraud crime in 2010.
To be sure, IIRIRA did apply more generously to one who had committed no crime in the past. But one who had already committed a crime could nonetheless avoid any future deportation simply by abiding by the law and not committing a second crime involving moral turpitude. See Fernandez-Vargas, 548 U.S. at 44, 126 S.Ct. 2422 (noting that “the alien’s choice” after enactment of a “new and less generous legal regime” was the cause of his ineligibility for discretionary relief). Thus, while the majority frames Jaghoori’s disability from the enactment of IIRIRA in terms of his loss of the accrual of years of continuous residence, the disability was, in actuality, Jaghoori’s inability to commit future crimes while remaining eligible for discretionary relief in the event that a removal proceeding were to be instituted against him.
Properly framed, the inability to commit a future crime cannot be considered a new disability because Jaghoori was never entitled to commit crimes in the first place. Jaghoori had no greater right to commit crimes before IIRIRA was enacted than he did thereafter. Nor did IIRIRA impose any new duties upon Jaghoori, since he was already required to obey the law.
The Supreme Court has so far recognized only two circumstances in whieh application of IIRIRA to past conduct would amount to a new disability: (1) where it would effectively ban an alien’s travel outside the United States, Vartelas v. Holder, — U.S. -, 132 S.Ct. 1479, 1487, 182 L.Ed.2d 473 (2012); and (2) where it would convert deportation from a mere possibility to an absolute certainty, St. Cyr; 533 U.S. at 323, 121 S.Ct. 2271. Even if an alien’s inability to commit future crimes without immigration consequences could be considered a disability, it would be far less debilitating than those categories of disability previously recognized by the Supreme Court and therefore would not be cognizable under Landgrafs second step.
The conclusion that § 1229b(d)(l) does not impose a new disability on Jaghoori’s 1995 conviction is inevitable when one considers Jaghoori’s reliance interests. Although the majority insists that whether Jaghoori relied on the availability of discretionary relief at the time of his 1995 conviction is “irrelevant,” ante, at 772, the Supreme Court has held to the contrary, see Vartelas, 132 S.Ct. at 1491 (“While the presumption against retroactive application of statutes does not require a showing of detrimental reliance, reasonable reliance has been noted among the ‘familiar considerations’ animating the presumption” (citation omitted) (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483)). Indeed, as the majority itself recognizes, reliance played a big part in the Court’s reasoning in St. Cyr. See 533 U.S. at 325, 121 S.Ct. 2271. And we have expressly held that an alien cannot “reasonably rely ‘on the availability of a discretionary waiver of deportation when choosing to engage in illegal ... *777 activity.’ ” Tasios v. Reno, 204 F.3d 544, 551 (4th Cir.2000) (quoting De Osorio v. INS, 10 F.3d 1034, 1042 (4th Cir.1993)); see also LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir.1998) (“It would border on the absurd to argue that these aliens might have decided not to commit drug crimes ... had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation”); St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir.2000), aff'd, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347; Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1150 (10th Cir.1999).
Additionally, when “fair notice ... and settled expectations” are taken into consideration, Landgraf, 511 U.S. at 270, 114 S.Ct. 1483, application of the stop-time rule to Jaghoori would not be inequitable. Indeed, the circumstances of the present case are substantially similar to those in Femandez-Vargas. In that case, 21 years after Fernandez-Vargas illegally returned to the United States, the United States sought, in 2003, to reinstate an earlier deportation order entered against him. Fernandez-Vargas, 548 U.S. at 35-36, 126 S.Ct. 2422. Before IIRIRA’s enactment in 1996, the reinstatement of a deportation order was subject to a discretionary waiver. But IIRIRA changed that, mandating that all illegal reentrants are to have their orders of removal reinstated without any possibility of discretionary relief. Id. at 34-35, 126 S.Ct. 2422. Rejecting the claim that IIRIRA had an impermissible retroactive effect when applied to Fernandez-Vargas, the Supreme Court stated that it was “the alien’s choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subject[ed] him to the new and less generous legal regime, not a past act that he [was] helpless to undo.” Id. at 44, 126 S.Ct. 2422. Moreover, the Court noted, in the six-month period between IIRIRA’s passage and its effective date, Fernandez-Vargas “had an ample warning that the new law could be applied to him and ample opportunity to avoid that very possibility by leaving the country.” Id. at 45, 126 S.Ct. 2422.
The same can be said about Jaghoori. Like Fernandez-Vargas, Jaghoori became ineligible for discretionary relief with IIR-IRA’s enactment. But it was Jaghoori’s choice in 2010 to commit a second crime involving moral turpitude that rendered him removable in the first place, thus “subjecting] himfself] to the new and less generous legal regime.” Fernandez-Vargas, 548 U.S. at 44, 126 S.Ct. 2422; see also Olatunji v. Ashcroft, 387 F.3d 383, 398 (4th Cir.2004) (“[A] statute[ ] do[es] not have a retroactive effect when a party has an opportunity to avoid all of its new consequences”). And the 13-year period between the enactment of IIRIRA and Jaghoori’s second crime • in 2010 gave him “ample warning” of the existence of the stop-time rule and the fact that it could result in his removal from the United States upon his commission of another crime.
Finally, the cases on which the majority relies are inapposite. In Jeudy v. Holder, 768 F.3d 595, 597 (7th Cir.2014), the petitioner’s pre-IIRIRA conviction itself rendered him deportable. Thus, the passage of IIRIRA meant that if the government ever got around to bringing removal proceedings, the petitioner was helpless to obtain discretionary relief. Here, the government had no basis to remove Jaghoori until he committed a second crime involving moral turpitude after IIRIRA’s passage. Indeed, the majority purports to distinguish cases from two other circuits on this exact same ground. Ante, at 771 (“[I]n each of these cases, the pre-IIRIRA crime rendered the alien immediately de *778 portable”). Similarly, in Sinotes-Cruz v. Gonzales, 468 F.3d 1190, 1193 (9th Cir.2006), IIRIRA reclassified the petitioner’s prior crimes as crimes involving moral turpitude in a provision that Congress explicitly made retroactive, making the petitioner immediately removable under § 1227(a)(2)(A)® upon IIRIRA’s effective date. Again, Jaghoori did not become removable until he committed a second crime. Had Jaghoori been law abiding, IIRIRA’s enactment would have produced absolutely no adverse consequences; he would have retained his lawful permanent residence status to this day. And finally, in Varíelas, the Court repeatedly stressed that Varíelas “engaged in no criminal activity after IIRIRA’s passage.” 132 S.Ct. at 1489.
Because IIRIRA’s stop-time rule imposed no new disability on Jaghoori and thus did not have any retroactive effect, I would deny his petition for review.