For the reasons stated above, we **REVERSE** the judgment of the district court.

**Gary LaGUERRE, Petitioner–Appellant,**

v.

**Janet RENO, et al., Respondents–Appellees.**

José, Martin Avelar–Cruz,
Petitioner–Appellee,

v.

Janet Reno, et al., Respondents–
Appellants.

Nos. 98–1954, 98–2613.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1998.

Decided Dec. 22, 1998.

Lucas Guttentag (argued), American Civil Liberties Union Foundation, New York, NY, Lisa J. Palumbo, Legal Assistance Foundation of Chicago, Chicago, IL, Lee Gelernt, American Civil Liberties Union, New York, NY, for Gary LaGuerre Petitioner–Appellant.

Janet Reno, Office of the U.S. Atty. Gen., Washington, DC, pro se.

Thomas P. Walsh, Office of the U.S. Atty., Civil Div., Chicago, IL, Papu Sandhu (argued), Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, for Janet Reno Respondent–Appellee.

Samuel Der-Yeghiayan, I.N.S, Chicago, IL, Thomas P. Walsh, Office of the U.S. Atty., Civil Div., Papu Sandhu, Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, for Doris Meissner, Brian R. Perryman Respondents–Appellees in No. 98-1954.

Diana C. White (argued), Maria A. Alvarado, Legal Assistance Foundation of Chicago, Chicago, IL, for José M. Avelar–Cruz Petitioner–Appellee.

John F. Hurlbut, Office of the U.S. Atty., Chicago, IL, Richard M. Evans and Jeffrey J. Bernstein, Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, for Janet Reno, Brian R. Perryman, Doris Meissner Respondents–Appellants in No. 98-2613.

John F. Hurlbut, Office of the U.S. Atty., Chicago, IL, Papu Sandhu, Dept. Of Justice, Civil Div., Immigration Litigation, Washington, DC, for Immigration and Naturalization Service Respondent–Appellant.

Before POSNER, Chief Judge, and WOOD, JR., and MANION, Circuit Judges.

POSNER, Chief Judge.

We have consolidated for argument and decision two immigration cases that present overlapping issues. In one, Gary LaGuerre sought habeas corpus in federal district court under 28 U.S.C. § 2241, challenging the refusal of the Board of Immigration Appeals to consider his application for a waiver of deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994 ed.). Section 212(c) (since repealed and replaced by a new, but basically similar, section, § 240A(b), 8 U.S.C. § 1229b(b)) grants the Attorney General (or the Attorney General's delegates, such as the Board of Immigration Appeals) discretion to waive deportation because of extraordinary hardship to the deportee or his family, or other exceptional circumstances. *Lovell v. INS*, 52 F.3d 458, 461 (2d Cir.1995). LaGuerre had been ordered deported because he had been convicted of certain drug-related offenses, and section 440(d) of the Antiterrorism and Effective Death Penalty Act, enacted in 1996, amended section 212(c) of the Immigration and Nationality Act to bar waivers of deportation for aliens ordered deported on the basis of such convictions. The Act was passed while the deportation proceedings against LaGuerre were pending; nevertheless the Board of Immigration Appeals held that section 440(d) applied to him. The district court agreed, and LaGuerre appeals.

The other case differs primarily in that the alien, José, Martin Avelar–Cruz, prevailed in the district court by convincing the judge that section 440(d) denies equal protection of the laws because it bars waiver only for aliens deportable on the basis of particular offenses and not for aliens excludable from the United States on the basis of the same offenses. If, before deportation proceedings had been instituted against Avelar–Cruz, he had left the United States and then tried to reenter, and exclusion proceedings had been instituted against him, he could, if ordered excluded, have applied for a waiver of exclusion. The Department of Justice has appealed from the judgment in Avelar–Cruz's case.

The issues common to both cases are whether the district court had jurisdiction and if so whether section 440(d) applies to proceedings that were pending when it was enacted. A third issue, presented only in Avelar–Cruz's case, is whether if there is jurisdiction and section 440(d) is applicable to this case, the section is unconstitutional.

Until 1961, the mode of judicial review of deportation orders was by habeas corpus, or, after 1952, by declaratory judgment actions, in federal district courts. *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955); *Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Heikkila v. Barber*, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953). In 1961 Congress made review of such orders by the courts of appeals, without preliminary recourse to the district courts, the exclusive method of judicial review. Immigration and Nationality Act, § 106, 8 U.S.C. § 1105a (1994 ed.). The purpose of consolidating review in the courts of appeals and thus cutting out the district courts was to thwart the dilatory tactics frequently employed by the lawyers for deportable aliens. *Foti v. INS*, 375 U.S. 217, 225–26, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). The right of habeas corpus was preserved, however, in section 106(a)(9) of the Act, 8 U.S.C. § 1105a(a)(9) (1970 ed.) (later renumbered (10)); *Foti v. INS, supra*, 375 U.S. at 231 n. 19, 84 S.Ct. 306, and courts have struggled to reconcile this provision, which permits the alien to proceed in district court, see 28 U.S.C. § 2241(a), with the overall statutory purpose. E.g., *Galaviz–Medina v. Wooten*, 27 F.3d 487, 489–92 (10th Cir.1994); *Williams v. INS*, 795 F.2d 738, 743–45 (9th Cir. 1986). The best view is that the provision was intended to be limited to situations in which the alien was unable to obtain judicial review under the new statutory procedure, and should be interpreted accordingly. E.g., *Bothyo v. Moyer*, 772 F.2d 353, 355–56 and n. 1 (7th Cir.1985); see *Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996).

Thirty-five years later, section 440(a) of the Antiterrorism and Effective Death Penalty Act amended section 106 to provide that a "final order of deportation against an alien who is deportable by reason of having committed a [drug] offense ... shall not be subject to review by any court." And section 401(e) of the new Act repeals section 106(a)(10) of the 1961 Act, the provision preserving a limited right to apply for habeas corpus. Nevertheless, several decisions in other circuits, as well as dicta in our deci-

sions in *Chow v. INS*, 113 F.3d 659, 668–69(7th Cir.1997), and *Turkhan v. INS*, 123 F.3d 487, 490 (7th Cir.1997), hold that the closing of the door to judicial review in section 440(a) does not apply to habeas corpus. *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998); *Goncalves v. Reno*, 144 F.3d 110, 118–23 (1st Cir.1998); *Magana–Pizano v. INS*, 152 F.3d 1213, amended, 159 F.3d 1217 (9th Cir.1998) (per curiam). These courts point out that Congress did not amend the basic federal habeas corpus statute, 28 U.S.C. § 2241, which is broadly enough worded to encompass persons detained under an order of deportation while awaiting the execution of the order; and they worry that if section 440(a) did close the door to habeas corpus it might violate the provision of the Constitution that forbids suspending habeas corpus other than in times of war or rebellion. U.S. Const. art. I, § 9, cl. 2. The Eleventh Circuit, however, has taken the opposite position, holding that section 440(a) does abrogate habeas corpus for aliens subject to it. *Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998).

We doubt that the suspension clause requires preserving habeas corpus as a vehicle for challenging final orders of deportation in cases in which the jurisdiction of the immigration authorities over the alien is not in question. At the time the Constitution was enacted, habeas corpus was an extremely limited remedy. It lay only to test the jurisdiction of whatever governmental body or officer was detaining the applicant. E.g., *Felker v. Turpin*, 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); Paul M. Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 *Harv. L.Rev.* 441, 465–74 (1963). Over the years, Congress has authorized a much broader use of habeas corpus; but it cannot be that curtailing an *optional* statutory enlargement violates the suspension clause. That would create an irrational ratchet. Habeas corpus could always be enlarged, but once enlarged could not be returned to its previous, less generous scope without a constitutional amendment. Once this was understood, there would be few if any further enlargements. There can be no doubt that the applicants for habeas corpus in the present cases are detained pursuant to valid orders

issued by the responsible authorities. The issue they wish to press—the issue of whether they are entitled to ask for discretionary relief from these orders—does not raise doubts about the jurisdiction of the Immigration and Naturalization Service over them.

We are suggesting not that the meaning of habeas corpus in the suspension clause was set in stone in 1787, an issue left open in *Felker v. Turpin, supra*, 518 U.S. at 664, 116 S.Ct. 2333, but only that the meaning of the *constitutional* term does not move in lockstep with changes in the meaning of the *statutory* term. *Lindh v. Murphy*, 96 F.3d 856, 867–68 (7th Cir.1996) (en banc), rev'd on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); see also *Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir.1997). The Sixth Amendment guarantees the right to counsel; but if Congress passed a statute entitling every federal criminal defendant to have three lawyers, it would not mean that the Sixth Amendment entitled every federal criminal defendant to three lawyers.

These considerations make us doubt that concerns about the suspension clause played any role in the omission from section 440(a) of an explicit reference to 28 U.S.C. § 2241. On the contrary, we cannot think of any theory under which Congress would have wanted section 440(a) to limit only review in the courts of appeals and leave intact whatever powers the old section 106(a)(10)—which, remember, section 440(a) repealed—had conferred on the district courts. The purpose of the new section was not to restore the pre–1961 regime and slow down deportation by creating two layers of judicial review, rather than one as under the regime that prevailed for all deportees between 1961 and the 1996. The purpose was to curtail and speed up judicial review of deportation orders directed against disfavored classes of criminals, such as drug offenders. If the effect of the new provision was, as our petitioners and the cases we have cited believe, to shift judicial review to the district court, followed of course by appeal to this court, then Congress enlarged judicial review for these deportees (and for no others!—the others remain under the 1961 procedure, which confines them to the courts of appeals except where direct review by those courts is unavailable) by

allowing them to challenge their deportation in two courts rather than one.

Against this the petitioners argue that judicial review by means of habeas corpus is narrower than the direct review in this court under the 1961–1996 regime, being limited to questions of law, so that, provided there is at least *some* evidence to support the order, the court will not disturb it. Under the former regime, the court (just the court of appeals, remember) reviewed for substantial evidence as well. *Dashto v. INS*, 59 F.3d 697, 703 (7th Cir.1995) *Paredes–Urrestarazu v. U.S. INS*, 36 F.3d 801, 821 (9th Cir.1994); *Gouveia v. INS*, 980 F.2d 814, 818 (1st Cir.1992). This distinction was pointed out by the Supreme Court in *Heikkila v. Barber, supra*, 345 U.S. at 235–36, 73 S.Ct. 603, and has been repeated in subsequent cases. E.g., *Goncalves v. Reno, supra*, 144 F.3d at 124–25. But *Heikkila* was decided in 1953, at a time when habeas corpus was conceived much more narrowly than later on, leaving one to wonder just how much practical difference there would be between the two modes of review today. Habeas corpus is available under 28 U.S.C. § 2241 for anyone held in custody in violation of federal law, including section 212(c) of the Immigration and Nationality Act and its successor provision, and the alien who claims that the Board of Immigration Appeals abused its discretion in failing to grant him relief under that section might be thought to be arguing that the BIA had violated the section. Cf. *Goncalves v. Reno, supra*, 144 F.3d at 125 n. 17. (Various statutes culminating in the Antiterrorism and Effective Death Penalty Act have curtailed the habeas corpus remedy for persons detained pursuant to a conviction, but an order of deportation is not a conviction.) If so, then Congress accomplished nothing toward its aim of curtailing judicial review if review on habeas corpus survived the door-closing impact of section 440(a). Maybe less than nothing, if by closing the door to review by the courts of appeals Congress simultaneously opened the door to review by the district courts *followed* by review by the courts of appeals. If not—if judicial review would be significantly narrower under habeas corpus than under section 106—we have the anomaly of two tiers of identical review, since in

cases in which all the district court considers is a question of law, our review is plenary.

■■■ We conclude that for the class of aliens encompassed by section 440(a), judicial review by means of habeas corpus did not survive the enactment of that section. It does not follow that judicial review of the class of deportation orders illustrated by the orders in these two cases has been totally extinguished. The government does not argue that. Mindful of the presumption that executive resolutions of constitutional issues are judicially reviewable, *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435 (7th Cir.1996) (en banc); *Marozsan v. United States,* 852 F.2d 1469 (7th Cir.1988) (en banc), it urges us to read into section 440(a) an exception that will allow the review of such issues. This is the road we started down in *Yang v. INS, supra,* 109 F.3d at 1192, is the approach of the Third Circuit, *Morel v. INS,* 144 F.3d 248 (3d Cir. 1998), and now of the Eleventh, *Richardson v. Reno, supra,* 162 F.3d at 1357–58, has been acknowledged as a possible approach by the Tenth, *Fernandez v. INS,* 113 F.3d 1151, 1155 (10th Cir.1997), and was favored by the Second Circuit in *Henderson v. INS, supra,* 157 F.3d at 119 n. 9, although that court felt constrained by Second Circuit precedent to eschew the approach in favor of preserving habeas corpus. If, as we believe in agreement with the government, the deportee can seek review of constitutional issues in the court of appeals directly, as under the prior regime governing judicial review of deportation, then the layering of judicial review proposed by the petitioners is avoided, judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice. These are unlikely but, given the unpopularity of aliens in some quarters (which has led the Supreme Court to classify them as a particularly vulnerable group for purposes of judicial review of their equal protection claims, *Bernal v. Fainter,* 467 U.S. 216, 219, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984)), not unthinkable. Suppose the Board of Immigration Appeals ordered an alien deported on the basis of a criminal conviction that it knew had been vacated, but it didn't care because the alien was black. We have expressed doubt that Congress intended to forbid such orders to be challenged in court under section 440(a). *Yang v. INS, supra,* 109 F.3d at 1192.

*Morel* and *Richardson,* in holding as do we today that direct review remains available under section 440(a) for aliens wishing to challenge their deportation on constitutional grounds, necessarily imply (and *Richardson* makes explicit) the rejection of habeas corpus in all cases in which direct review is possible, as there is no question of Congress's power to prescribe a habeas corpus substitute. *Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1976); *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *Blair–Bey v. Quick,* 151 F.3d 1036, 1042–43 (D.C.Cir. 1998); cf. *In re Davenport,* 147 F.3d 605, 609 (7th Cir.1998); *In re Dorsainvil,* 119 F.3d 245 (3d Cir.1997). By the same token, if for reasons beyond the alien's control he could not have raised his substantial constitutional issue in this court by seeking review here directly under section 440(a), he may be able to proceed in the district court under 28 U.S.C. § 2241. This we need not decide; such cases will be very rare, and these two cases are not among them. These petitioners brought their actions in the wrong court under the wrong statute. And it is now too late for them to file a petition for review in the right court, 8 U.S.C. § 1105a(a)(1) (1994); *Stone v. INS,* 514 U.S. 386, 406, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995); *Torres v. INS,* 144 F.3d 472, 473 (7th Cir.1998); *Hadera v. INS,* 136 F.3d 1338, 1341 (D.C.Cir.1998), that is, in this court. But we shall add, lest they feel that we've tripped them up on a technicality, that they would not have prevailed even if they hadn't dropped the jurisdictional ball. The Board of Immigration Appeals was right that the abolition of waiver of deportation for the class of deportees that includes these two petitioners applies to pending cases, and so to the petitioners.

■■■ Several sections of the Antiterrorism and Effective Death Penalty Act that curtail the rights of aliens are expressly prospective, §§ 440(f), 421(b), 435(b), and two are expressly retroactive, §§ 401(f), 413(g), but section 440(d) is neither. This makes it

impossible for us to determine as a matter of legislative intent whether that section is to be applied prospectively or retroactively, *Chow v. INS, supra,* 113 F.3d at 665, and so we need a rule that determines decision when legislative meaning is opaque. The relevant rule is that statutes which change primary (out of court) duties, for example statutes that impose new tort liabilities, are applied prospectively, while statutes that change merely procedures are applied retroactively. *Lindh v. Murphy,* 117 S.Ct. 2059, 2062–63 (1997); *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Chow v. INS, supra,* 113 F.3d at 665; *Reyes–Hernandez v. INS,* 89 F.3d 490, 492 (7th Cir.1996); *United States v. Certain Funds,* 96 F.3d 20, 24 (2d Cir.1996). The reasoning behind this distinction is that people are much more likely to rely on substantive than procedural law. But this implies that when it is the kind of procedural change that does disturb reasonable expectations, the presumption in favor of retroactive application is reversed. Suppose a person facing deportation conceded deportability in reliance on having a good shot at a waiver of deportability. In that event, to abolish such waiver for his class of deportees after he had relied by forgoing a challenge to deportability would pull the rug out from under him. And in that case we have held that the abolition would not apply to him, would be prospective only. *Reyes–Hernandez v. INS, supra,* 89 F.3d at 492–93; see also *Yang v. INS, supra,* 109 F.3d at 1191–92; *Arevalo–Lopez v. INS,* 104 F.3d 100 (7th Cir.1997); *In re Soriano,* Interim Decision No. 3289, p. 8, 1996 WL 426888 (BIA Feb. 21, 1997); but see *Kolster v. INS,* 101 F.3d 785, 789 (1st Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27, 30 (2d Cir.1996). There is no suggestion of such "mouse trapping" here. It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

We may seem to have assumed that if the petitioners had filed a timely petition for review in this court, we could have decided the issue. The government argues that we could not have, since the issue is not constitutional. This would make the decision of the Board of Immigration Appeals regarding the domain of section 440(d) judicially unreviewable. It seems unlikely that Congress would have wanted the Board to have the final word on so pure and fundamental a question of law as when the statute went into effect. So maybe the door to judicial review has been left a little more ajar than we have suggested. *Yang v. INS, supra,* 109 F.3d at 1195–96; *Richardson v. Reno, supra,* 162 F.3d at 1357–58. But that is another question that we need not answer today.

█ We add, finally, that there is no merit to Avelar–Cruz's equal protection challenge. A rational and indeed sensible reason can readily be assigned to Congress's more lenient treatment of excludable as distinct from deportable aliens: it creates an incentive for deportable aliens to leave the country—which is after all the goal of deportation—without their having to be ordered to leave at the government's expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.

This equal protection issue must not be confused with that in *Francis v. INS,* 532 F.2d 268 (2d Cir.1976), where the government was taking the irrational position that an alien who after coming to the United States had taken a trip abroad and returned and was then ordered deported was entitled to more consideration than one who had never taken a foreign trip after coming to the United States. That is different from the situation of an alien who seeks discretionary relief while he is still outside the United States.

The essential point, however, is that the petitioners initiated their actions in the wrong court. The judgment in LaGuerre's case is modified to base dismissal on want of jurisdiction, and the judgment in Avelar–Cruz's case is reversed with instructions to

dismiss the action, also for want of jurisdiction.