**Shamsher SINGH, Petitioner–Appellee,**

**v.**

**Janet RENO, Attorney General of the United States, and Brian R. Perryman, District Director, Immigration and Naturalization Service, Respondents–Appellants.**

No. 98–3584.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1999.

Decided May 26, 1999.

As Amended on Denial of Rehearing Aug. 10, 1999.

Harold D. Block (argued), Milwaukee, WI, for Petitioner–Appellee.

Papu Sandhu (argued), Thankful T. Vanderstar, Department of Justice, Civil Div., Immigration Litigation, Washington, DC, for Respondent–Appellant.

Before CUDAHY, COFFEY and DIANE P. WOOD, Circuit Judges.

CUDAHY, Circuit Judge.

Shamsher Singh, a native of India, was admitted into the United States as a lawful permanent resident on July 11, 1988. Singh owned a food store in Milwaukee. On April 23, 1990, he got into a tussle with a customer which left the customer dead and Singh in jail, serving just under one year of a four year sentence following a state court conviction for second degree reckless homicide. On October 9, 1992, the Immigration and Naturalization Service (INS) issued an order to show cause (OSC) why Singh should not be deported pursuant to § 241(a)(2)(A)(i) of the Immigration and Nationality Act (INA) (redesignated INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i)), on the ground that he had been convicted of a crime involving moral turpitude. Evidently the INS paperwork was not in order and, in January 1994, an immigration judge (IJ) closed the proceedings pursuant to the parties' stipulation. Singh then requested that the matter be recalendared so that it could be definitively put to rest. The INS continued to drag its feet and eventually a hearing was scheduled for late 1996. That hearing was canceled because the IJ was ill. It was subsequently rescheduled, but canceled again.

Meanwhile in 1996—while Singh's case was still pending—Congress amended the INA by way of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. 104–132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. 104–208, Div. C., 110 Stat. 3009. Among the significant changes introduced by the 1996 Amendments, three are immediately pertinent to this appeal: (1) judicial review of deportation orders was greatly curtailed and, in the case of certain classes of criminal aliens, virtually extinguished; (2) the availability of a discretionary waiver of deportation was denied for these classes of criminal aliens; and (3) the criminal category of aggravated felony was redefined for deportation purposes. The INS

availed itself of the last of these changes to assert Singh's deportability on the ground that he had committed an aggravated felony (a category of criminal offense separate and distinct from the category of offense—a crime involving moral turpitude—originally cited by the INS). *See* INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). After a brief hearing, on December 9, 1997, the IJ held that Singh was deportable as an aggravated felon and that he was ineligible for discretionary relief (by virtue of the second of the statutory changes noted above). The Board of Immigration Appeals (BIA) dismissed Singh's appeal as untimely. On June 8, 1998, the INS issued a "bag and baggage" letter summoning Singh to report for deportation.

Singh filed a petition for a writ of habeas corpus in the district court seeking review of his deportation order. The district court took the position that the 1996 Amendments did not foreclose habeas review and granted the petition, reasoning that AEDPA § 440(d) violates Singh's equal protection rights because it bars deportable criminal aliens from applying for a discretionary waiver while allowing certain excludable criminal aliens to do so. *See* INA § 212(h), 8 U.S.C. § 1182(h). In other words, the statute treats aliens within the same criminal class differently depending on whether they are inside the country and wish to remain or have left the country and wish to re-enter.

The government now appeals arguing that the district court lacked subject matter jurisdiction on the basis of our recent decision in *LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir.1998) (*reh'g & reh'g en banc denied,* Apr. 9, 1999). In *LaGuerre*—which was decided after the district court issued its opinion in the present case—we held that the 1996 Amendments generally foreclosed judicial review of deportation orders by way of habeas corpus. *Id.* at 1038–1040. However, we recognized that a safety valve remains whereby deportees can seek direct review of substantial constitutional issues in the courts of appeals.

*Id.* at 1040. Singh now contends that he comes within the safety valve because his rights to equal protection and due process have been violated. The government maintains that Singh's constitutional claims are without merit and that, in any event, because his appeal to the BIA was untimely, Singh failed to exhaust his administrative remedies.

We find that the district court lacked subject matter jurisdiction and we therefore reverse its grant of Singh's habeas petition. However, we also find that Singh is entitled to direct review of his constitutional claims in this Court. And because Singh could not have known that he was in the wrong court—our case law pre-*La-Guerre* would have directed him to the district court rather than to this Court—we believe that he is entitled to another chance to argue his case.

Historically, aliens facing deportation could petition the district courts for a writ of habeas corpus. In 1961, however, Congress consolidated judicial review of deportation orders in the courts of appeals to streamline the deportation process. *See LaGuerre,* 164 F.3d at 1038 ("The purpose of consolidating review in the courts of appeals and thus cutting out the district courts was to thwart the dilatory tactics frequently employed by lawyers for deportable aliens.").[1] Then in 1996, Congress further curtailed judicial review. First, AEDPA § 440(a) amended INA § 106 to provide that "any final order of deportation against an alien who is deportable by reason of having committed a [covered] criminal offense ... shall not be subject to review by any court." 8 U.S.C. § 1105a(a)(10) (repealed by IIRIRA, now *see* 8 U.S.C. § 1252(a)(2)(C)). Second, IIRIRA § 306(f)(1)(g) restricted review—for criminal and non-criminal deportees alike—in the following terms:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court recently recognized that § 1252(g) does not bar review generally but only review of the three listed discretionary decisions, namely to "commence proceedings, adjudicate cases, or execute removal orders." *See Reno v. American–Arab Anti-Discrimination Committee,* —— U.S. ——, ——, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999); *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir.1999).

■ *LaGuerre* holds that the 1996 Amendments eliminate habeas corpus jurisdiction in cases to which they apply.[2] This appears to be just such a case. Singh's conviction for an aggravated felony—a covered criminal offense—precludes the possibility of review by virtue of AEDPA § 440(a). In addition, since he is challenging his administrative adjudication and removal order, IIRIRA § 306(f)(1)(g), 8 U.S.C. § 1252(g) applies.[3] Moreover,

---

1. A vestige of the right of habeas corpus was preserved for "situations in which the alien was unable to obtain judicial review under the new statutory procedure." *LaGuerre,* 164 F.3d at 1038. That provision was repealed by AEDPA § 401(e).

2. This is also the position of the Eleventh Circuit. *See* Richardson v. Reno, 162 F.3d 1338, 1356–58 (11th Cir.1998). Some other circuits have taken a contrary view, holding that district courts continue to have habeas jurisdiction under 28 U.S.C. § 2241. *See* Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir.

1999); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998); *Goncalves v. Reno,* 144 F.3d 110, 118–23 (1st Cir.1998); *Lerma de Garcia v. INS,* 141 F.3d 215, 217 (5th Cir.1998). Two of our decisions pre-*LaGuerre* had hinted at the same result. *See Turkhan v. INS,* 123 F.3d 487, 490 (7th Cir.1997); *Chow v. INS,* 113 F.3d 659, 669 (7th Cir.1997).

3. Because Singh's deportation proceedings were initiated before April 1, 1997 and his appeal was dismissed by the BIA after October 30, 1996, IIRIRA's transitional rules apply to this case. One such rule, IIRIRA

since Singh concedes that he is detained pursuant to valid orders issued by the appropriate authorities, we need not concern ourselves here with the potential reach—noted in *LaGuerre, see* 164 F.3d at 1038—of the constitutional writ of habeas corpus. *See* U.S. Const. art. I, § 9, cl. 2; *Parra,* 172 F.3d at 957-958; *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997) ("Aliens may seek the writ that Art. 1, § 9, cl. 2 preserves against suspension. But we are reluctant to place weight on its availability, because the Supreme Court long ago made it clear that this writ does not offer what our petitioners desire: review of discretionary decisions by the political branches of government."). Thus, we conclude that the district court lacked subject matter jurisdiction to entertain Singh's habeas petition.[4]

■ The matter does not end there, however. The government concedes that the 1996 Amendments did not extinguish judicial review altogether. As we explained in *LaGuerre,* direct review in the courts of appeals remains an option for aliens wishing to challenge their deportation on constitutional grounds. Thus, "judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice." 164 F.3d at 1040. *See also, Richardson v. Reno,* 162 F.3d 1338, 1376 (11th Cir.1998) ("a court of appeals retains jurisdiction to entertain a constitutional attack on this INA statute ...."); *Henderson v. INS,* 157 F.3d 106, 119 n. 9 (2d Cir.1998) (stating that were it not for Second Circuit precedent "the members of this panel would be strongly

inclined to find that the proper mechanism for judicial review is petition for review in the court of appeals"); *Fernandez v. INS,* 113 F.3d 1151, 1155 (10th Cir.1997) (noting that judicial review is available for substantial constitutional errors). The genesis of this approach lies in the Supreme Court's acknowledgment that review may be implied where its absence would raise serious constitutional concerns. *See Webster v. Doe,* 486 U.S. 592, 603–04, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435, 1441 (7th Cir.1996) ("Each statute must stand on its own two feet, but each is informed by the presumption ... against slamming the courthouse door in the face of holders of constitutional claims"); *Marozsan v. United States,* 852 F.2d 1469 (7th Cir.1988) (en banc); *Henderson,* 157 F.3d at 119 n. 9.

In locating the procedure for review of constitutional claims by the courts of appeals, we look to the model of appellate review of administrative determinations. In this respect, the INA incorporates the standard procedure for review of agency action by courts of appeals prescribed by 28 U.S.C. § 2342. *See* 8 U.S.C. § 1252(a)(1). That procedure allows a deportee to seek review directly in the courts of appeals "not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Indeed, this same procedure continues to regulate those limited areas of judicial review of administrative action that have not been eliminated by the 1996 Amendments.

§ 309(c)(4)(G) provides that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a [covered] criminal offense...." As regards the permanent rules, IIRIRA § 306(f)(C)(1) provides that § 1252(g) "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings" under the Act. Thus, the bar on judicial review contained in § 1252(g) applies in this case. *See Sandoval,* 166 F.3d at 229.

4. Of course, the district court—like any other court—had jurisdiction to determine whether it had jurisdiction. *See Xiong v. INS,* 173 F.3d 601, 604 (7th Cir.1999); *Yang,* 109 F.3d at 1192. That is, the district court had jurisdiction to determine whether Singh is (i) an alien, (ii) deportable, (iii) by reason of having committed a covered criminal offense. The district court proceeded on the assumption that these conditions were satisfied. *See* Appellants' Br. at A–2 & A–9 n. 2 (Dis. Ct. Mem. & Ord. [17] Aug. 14, 1998).

■ Review of constitutional claims by the courts of appeals, however, differs from review of administrative action in certain important respects. Administrative agencies, although they may consider constitutional claims, lack the authority to deal with them dispositively; the final say on constitutional matters rests with the courts. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994); *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (noting that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures ...."); *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993) (discussing the principle in the context of the BIA). Thus, access to the courts of appeals enables an alien to mount what is in effect a collateral constitutional challenge to deportation proceedings. *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that IIRIRA's specific bar on judicial review of decisions relating to adjustment of status did not reach "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications."); Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that a due process challenge to the lack of a hearing prior to the termination of social security benefits was collateral to the denial of benefits). Prior to 1961, such collateral challenges were routinely brought by way of habeas petitions in the district courts. But with the elimination of habeas jurisdiction, exclusive responsibility for the prevention of miscarriages of justice now rests with the courts of appeals. Absent this safety valve of judicial review, an alien facing deportation would be denied a judicial forum for the effective adjudication of his or her constitutional claims. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

Singh seeks an opportunity to invoke this safety valve to advance two constitutional claims. First, he contends that AEDPA § 440(d) violates his equal protection rights because it prevents deportable criminal aliens from applying for a discretionary waiver while allowing excludable aliens to do so. We rejected this argument in *LaGuerre*, noting that Congress's more lenient treatment of excludable aliens has a rational basis insofar as it creates an incentive for deportable aliens to leave the country at their own expense. *See* 164 F.3d at 1041.

■ Singh's second constitutional claim is that the foot-dragging of the INS led to a denial of his due process rights. Although the INS issued the OSC on October 9, 1992, Singh's case was not calendared for hearing until late 1996. By this time, of course, the 1996 Amendments had come into effect and with them the bar on Singh's right to apply for a discretionary waiver. Thus, when Singh was entitled to apply for relief, he was practically prevented from doing so and, as soon as he was free to apply, he found that he was no longer entitled. Singh blames the INS for this Kafkaesque turn of events. At oral argument, when asked to explain the delay, counsel for the INS merely alluded to an internal debate over whether Singh was in fact deportable on grounds of moral turpitude and argued that, in any event, an alien has no substantive right to have a claim heard at a particular time. This may be correct in the abstract, but here there is the very unusual circumstance of Singh rather than the INS pressing for the resolution of Singh's status. We find the government's explanations unconvincing, at least on this brief airing. In our view, Singh has stated the basis of a substantial constitutional claim that entitles him to review in this Court.

■ We are mindful that this safety valve—direct review of constitutional claims in the court of appeals—is an exceptional procedure. But we believe that Singh's Homeric odyssey through the administrative and judicial process adds up

to a highly unusual case. Recall that six and a half years have elapsed since the INS issued the OSC and that, of crucial significance, it was Singh who pressed to have the matter resolved. Exercising our discretion in these exceptional circumstances, we decide that Singh may seek direct review of his due process claim in this Court.

■ The government protests that Singh has lost his chance because he embarked on the wrong procedural route: he sought habeas relief in the district court whereas he should have brought his constitutional claim directly to our door. But Singh's choice of venue, though incorrect, was not unreasonable under the circumstances. At the time Singh filed his habeas petition, the case law of this Circuit did not rule out district court jurisdiction. *See Turkhan v. INS*, 123 F.3d 487, 489–90 (7th Cir.1997); *Chow v. INS*, 113 F.3d 659, 668–69 (7th Cir.1997). Since Singh could not have known that he was headed for the wrong court, we think it unfair that he be prejudiced for failing to seek review in this Court within the statutory 30–day deadline. *See* 8 U.S.C. § 1252(b)(1).

■ The government places a final obstacle on Singh's road to redress. Singh appealed to the BIA against the IJ's ruling that he was deportable and ineligible for relief. However, the BIA dismissed his appeal as untimely, noting that since the IJ's order was mailed on December 9, 1997 and Singh's notice of appeal was filed on January 12, 1998, his appeal fell outside the 30–day statutory deadline. The government contends that because his appeal was untimely, Singh failed to exhaust his administrative remedies and is therefore precluded from seeking review. Generally, an alien must exhaust his or her administrative remedies before seeking review of a deportation order, *see* 8 U.S.C. § 1252(d), and an alien who fails to raise an issue below has not fulfilled this exhaustion requirement. *See Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir.1998). However, certain constitutional due process claims—like the one raised here—may not require exhaustion because there has been a showing that the BIA could not deal dispositively with the matter. There is, on the other hand, a strong presumption favoring exhaustion (which is a statutory requirement). If the BIA can conceivably dispose of the claim, the alien is required to exhaust. Procedural errors, correctable by the Board, are examples of matters requiring administrative exhaustion, but the exhaustion requirement is not limited to them. Since, at least on the present showing, Singh's claim is not one with which the Board could deal dispositively, he can avail himself of the limited exception to the exhaustion requirement. At the same time, we recognize that there are prudential considerations which caution against our addressing Singh's claim in the first instance, notably the need to compile an adequate record to facilitate judicial review. *See Castaneda–Suarez*, 993 F.2d at 145. Here, the development of the factual record is a matter best left to the IJ. Thus, in the unusual circumstances of this case, we hold that Singh may proceed with his due process claim before the IJ.

Accordingly, we reverse the district court's grant of a writ of habeas corpus and remand with instructions to dismiss for lack of jurisdiction. To the extent that a due process claim has been brought to us, and at the request of the agency, we vacate any prior administrative determinations and remand to the Board with instructions to remand to the immigration judge for a hearing consistent with this opinion. Singh will have 30 days from any final order below in which to seek review in this court in accordance with 8 U.S.C. § 1252(b)(1).

Reversed and Remanded.