In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2065

Alejandro Morales-Ramirez,

Petitioner-Appellant,

v.

Janet Reno, Attorney General of the
United States; Doris Meissner, Commissioner
of the Immigration, Naturalization Service;
Brian R. Perryman, Chicago District Director
of the Immigration and Naturalization Service,
and the Immigration and Naturalization Service,

Respondents-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7067--Blanche M. Manning, Judge.

Argued February 11, 2000--Decided April 13, 2000

Before Posner, Chief Judge, and Manion and Kanne,
Circuit Judges.

Kanne, Circuit Judge.  In 1997, the INS ordered
Alejandro Morales-Ramirez to be removed to Mexico
as a result of a 1993 conviction for importation
of marijuana. Morales-Ramirez sought habeas
corpus review of his removal in district court,
claiming that he was denied due process as a
result of the INS's failure to institute timely
exclusion proceedings against him. The district
court dismissed his petition on the basis of our
holding in LaGuerre v. Reno, 164 F.3d 1035 (7th
Cir. 1998), which limits review of removal
proceedings to the appellate courts. Morales-
Ramirez appeals this dismissal, but we find that
Morales-Ramirez has not raised a substantial
constitutional claim and dismiss his complaint.

I.  History

   Alejandro Morales-Ramirez is a native and
citizen of Mexico. Since 1976, he has also been
a lawful permanent resident of the United States.
In February 1993, Morales-Ramirez attempted to
enter the United States with about 350 pounds of
marijuana in his car. He was stopped at the

border and arrested. Following his arrest, the INS "paroled" Morales-Ramirez into the United States for criminal prosecution.

"Parole" into the United States allows an individual physically to enter the country, but it is not equivalent to legal entry into the United States. Upon his parole into the country, the INS served Morales-Ramirez with a "Notice of Exclusion Proceedings," which informed him that his actions may have rendered him inadmissable to the United States. Under immigration procedures at that time, Morales-Ramirez would have been compelled to enter into "exclusion" proceedings, in which the immigration court had the discretion to determine whether his exclusion might be waived. See 8 U.S.C. sec. 1226(a) (1995). However the INS never sought officially to commence proceedings by filing the appropriate charging document, the "Notice of Exclusion Proceedings," with the district court, as required by 8 C.F.R. sec. 240.30 (1999).

In June 1993, Morales-Ramirez pleaded guilty to importation of a controlled substance and was sentenced to sixty months imprisonment, followed by forty-eight months supervised release. In August 1993, the INS issued a warrant of detainer on Morales-Ramirez, which ensured that he would be transferred to INS custody upon his release from prison. Morales-Ramirez was released after serving fifty-two months in prison.

During the course of Morales-Ramirez's incarceration, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208 (1996), and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132 (1996), which changed the nature of proceedings against immigrants alleged to have violated the Immigration and Naturalization Act of 1952 ("INA"), 8 U.S.C. sec. 1101 et seq. One among the many amendments to the INA instituted therein was the replacement of exclusion and deportation proceedings with removal proceedings. In removal proceedings, unlike exclusion proceedings, aggravated felons such as Morales-Ramirez are no longer eligible to apply for relief from deportation, now entitled "cancellation of removal." See 8 U.S.C. sec. 1229b(a) (1996). These amendments took effect on April 1, 1997, and apply to all aliens eligible to be removed after that date. However, all aliens previously in deportation or exclusion proceedings as of April 1, 1997, were to remain in deportation or exclusion proceedings, rather than in removal proceedings. See IIRIRA sec. 309(c)(1)(A), enacted as 8 U.S.C. sec. 1101; 8 C.F.R. sec.sec. 240.30, 240.40 (1997).

On August 4, 1997, Morales-Ramirez finished his prison sentence and was taken into INS custody. Instead of initiating exclusion proceedings against Morales-Ramirez, the INS initiated removal proceedings against him. At his removal hearing, Morales-Ramirez moved to terminate the removal proceedings, claiming that the INS had previously commenced exclusion proceedings against him by serving him with the "Notice of Exclusion Proceedings." By commencing removal proceedings, he claimed that the INS had terminated his exclusion proceedings without authority. However, the immigration judge found that proceedings had never commenced because the "Notice of Exclusion Proceedings" had never been filed with the immigration court. Therefore the court denied Morales-Ramirez's motion and ordered him removed to Mexico. Morales-Ramirez appealed to the Board of Immigration Appeals ("BIA"), but in August 1998, the BIA affirmed the decisions of the immigration court on the grounds that the charging document had never been filed.

On November 4, 1998, Morales-Ramirez filed a petition for writ of habeas corpus with the district court, claiming that the INS had violated his due process rights by impermissibly terminating the exclusion proceedings that it had brought against him. On December 22, 1998, we issued LaGuerre, 164 F.3d at 1039, in which we held that sec.sec. 440(a) and 401(e) of the AEDPA precluded district courts from reviewing habeas corpus petitions presented to receive judicial review of the removal orders of deportees. On this basis, the district court dismissed Morales-Ramirez's petition for lack of subject matter jurisdiction.

II. Analysis

As a threshold matter, we must determine whether the district court correctly dismissed Morales-Ramirez's petition. Morales-Ramirez originally challenged his order of removal by habeas corpus petition filed in district court. However, section 306(f)(1)(g) of IIRIRA, enacted as 8 U.S.C. sec. 1252(g), restricts review of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. sec. 1252(g). In LaGuerre, we held that the 1996 amendments to the INA eliminate habeas corpus jurisdiction in all cases after the effective date of the statutes. LaGuerre, 164 F.3d at 1040; see also Singh v. Reno, 182 F.3d 504, 508 (7th Cir. 1999). However, in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999) (hereinafter

"AADC"), the Supreme Court recognized that sec. 1252(g) only bars district court review of the explicitly listed discretionary decisions of the Attorney General: to commence proceedings, adjudicate cases and execute removal orders, which potentially limited the scope of LaGuerre. After AADC, in Singh v. Reno, 182 F.3d at 509, we relied on the reasoning of LaGuerre to conclude that sec. 1252(g) applies whenever an alien makes an adjudicatory challenge to an order of removal, and for this reason, the district court has no jurisdiction to hear a petition for writ of habeas corpus.

Several other circuits have interpreted AADC to preserve an alien's right to petition for habeas corpus in cases where sec. 1252(g) does not apply. See Magana-Pizano v. INS, 200 F.3d 603, 608 (9th Cir. 1999); Pak v. Reno, 196 F.3d 666, 671 (6th Cir. 1999); Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 305 (5th Cir. 1999); Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1143 (10th Cir. 1999); Shah v. Reno, 184 F.3d 719, 724 (8th Cir. 1999); but see Richardson v. Reno, 180 F.3d 1311, 1315 (11th Cir. 1999). Moreover, LaGuerre also left open the possibility that the Suspension Clause, see U.S. Const. art. I, sec. 9, cl. 2, may leave open habeas corpus jurisdiction for the limited purpose of determining whether a deportee was detained by a valid order issued by an authority with appropriate jurisdiction. See LaGuerre, 164 F.3d at 1038. However, as in Singh, Morales-Ramirez does not challenge the validity of his order of detention or that it was issued by the appropriate authority, so we need not address the potential availability of habeas corpus relief in those circumstances. See Singh, 182 F.3d at 509. Instead, Morales-Ramirez challenges the administrative adjudication of his removal order, which we have found to be governed by sec. 1252(g). See id. Therefore, Singh and LaGuerre control, and we conclude that the district court lacked subject matter jurisdiction to hear Morales-Ramirez's petition for writ of habeas corpus.

Morales-Ramirez concedes that the district court lacked jurisdiction to entertain his habeas corpus petition. Nonetheless, he contends that his due process claim raises substantial constitutional issues that we should address directly. In LaGuerre, we proposed that, rather than seek habeas corpus review, when a deportee raises constitutional claims "the deportee can seek review of constitutional issues in the court of appeals directly." LaGuerre, 164 F.3d at 1040. This procedure was intended to provide "a safety valve . . . to enable judicial correction of bizarre miscarriages of justice." Id. In Singh,

we developed this "safety valve" approach of direct appellate court review of constitutional claims, allowing us to consider whether the deportee in that case raised substantial constitutional claims. Singh, 182 F.3d at 510. Morales-Ramirez also seeks to classify his predicament as a bizarre miscarriage of justice, which may only be rectified by our direct review.

The traditional procedure for review of constitutional claims under the INA allows a deportee to seek review by filing a claim with us "not later than 30 days after the date of the final order of removal." 8 U.S.C. sec. 1252(b)(1); see Singh, 182 F.3d at 509. By mistakenly filing its writ of habeas corpus with the district court instead of appealing directly to us, Morales-Ramirez has missed this deadline. The government argues that, for this reason, we should decline to address the arguments presented by Morales-Ramirez. However, Morales-Ramirez filed his petition for habeas corpus with the district court on November 4, 1998, more than a month before we issued LaGuerre.

At that time, Morales-Ramirez claims that he followed the directives of two prior cases, which suggested that the appropriate avenue for review of removal proceedings was by habeas petition made to the district court. See Turkhan v. INS, 123 F.3d 487, 490 (7th Cir. 1997) (hereinafter "Turkhan I"); Chow v. INS, 113 F.3d 659, 668-69 (7th Cir. 1997). In Singh, we faced the issue whether to review the claims of a petitioner who filed for relief in the district court before LaGuerre. We stated that "we think it unfair that [the deportee] be prejudiced for failing to seek review in this court within the statutory 30-day deadline" because our case law seemed to prohibit it. Singh, 182 F.3d at 511. In Turkhan v. Perryman, 188 F.3d 814, 824 (7th Cir. 1999) ("Turkhan II"), we applied the "safety valve" exception provided in LaGuerre in the "extremely rare" case of a deportee who had twice sought our direct review before seeking habeas corpus review in the district court. As in these prior cases, Morales-Ramirez filed his habeas corpus petition with the district court on the basis of our prior opinions Turkhan I and Chow, instead of seeking direct review with this court. Morales-Ramirez did not endure the "homeric odyssey" that beset Singh, nor did he twice petition this court successfully to receive direct review, as in Turkhan I. Nonetheless, because Morales-Ramirez's decision to file for habeas corpus review was based on the case law at that time and predated the release of LaGuerre, we believe that it would be unfair to prejudice him for relying on our precedent in seeking habeas corpus relief in the district court. For this reason, assuming that

Morales-Ramirez raises substantial constitutional claims, we will assume jurisdiction to hear this appeal./1 See Turkhan II, 188 F.3d at 824; Singh, 182 F.3d at 509.

To retain jurisdiction under the "safety valve" exception created in LaGuerre, Morales-Ramirez must raise substantial constitutional claims. See LaGuerre, 164 F.3d at 1040; Singh, 182 F.3d at 509. Morales-Ramirez contends that his due process rights were violated by the INS when it terminated exclusion proceedings against him to commence removal proceedings. He claims that exclusion proceedings originally commenced at the time the INS served him with its "Notice of Exclusion Proceedings," in March 1993. At that time, sec. 212(c) of the INA vested in the Attorney General, or her delegates, the authority to grant a waiver of exclusion to certain aliens, thereby allowing them legally to re-enter and remain in the country. See 8 U.S.C. sec. 1182(c) (1995); see also, e.g., Henry v. INS, 8 F.3d 426 (7th Cir. 1993) (reviewing denial of sec. 212(c) application for waiver of exclusion). In 1996, however, sec. 304(b) of IIRIRA repealed sec. 212(c), discontinuing the eligibility of criminal aliens to apply for waiver of exclusion. See 8 U.S.C. sec. 1182(c) (1997). For this reason, Morales-Ramirez claims that by commencing removal proceedings, the INS, in effect, terminated "pending" exclusion proceedings and deprived him of his substantive right to apply for waiver of exclusion.

The government claims that proceedings did not commence until it filed a charging document with the immigration court in August 1997, because its regulations condition the commencement of proceedings on the filing--not service. See 8 C.F.R. sec. 240.30 (1999) ("An exclusion proceeding is commenced by the filing of [the charging document] with the Immigration Court, and an alien is considered to be in exclusion proceedings only upon such filing."). Because the charging documents were not filed until 1997, after the effective date of the repeal of sec. 212(c) by IIRIRA sec. 304(b), the government claims that Morales-Ramirez's case was not "pending" before the effective date of sec. 304(b), and he was never eligible for waiver of exclusion. For this reason, at the time that the INS commenced removal proceedings, Morales-Ramirez had no substantive right to apply for waiver of exclusion and cannot raise a constitutional claim on these grounds.

Morales-Ramirez disputes the government's contention that 8 C.F.R. sec. 240.30 should control our analysis of when proceedings commence. He claims that proceedings commenced

when he was served with the "Notice of Exclusion Proceedings," in March 1993. Had proceedings against Morales-Ramirez commenced in 1993, his exclusion proceedings would have been "pending" in 1997, when IIRIRA came into force. In such case, Morales-Ramirez's case would fall within the pending cases exception of IIRIRA sec. 309(c)(1)(A), which applies to "an alien who is in exclusion or deportation proceedings before [April 1, 1997]." If his exclusion proceedings were "pending" as of that date, sec. 212(c) would still apply to such proceedings, and Morales-Ramirez would remain eligible to apply for waiver of exclusion.

The question whether to apply 8 C.F.R. sec. 240.30, which pegs the commencement of proceedings on the filing of a charging document in immigration court to determine when proceedings commence is a question of first impression in this circuit. Morales-Ramirez places great emphasis on decisions of other circuits that determined the commencement of proceedings to have occurred when the charging document was served on individuals. See Wallace v. Reno, 194 F.3d 279, 287 (1st Cir. 1999); Henderson v. INS, 157 F.3d 106, 130 n.30 (2d Cir. 1998). However, the First Circuit's holding in Wallace v. Reno focused on the commencement of proceedings for the purpose of determining whether sec. 440(d) of the AEDPA should be applied retroactively. Wallace, 194 F.3d at 287. In that case, the court determined that sec. 440(d) should not be applied retroactively to "pending" proceedings, and based its determination whether proceedings were actually "pending" on the reliance interests of aliens involved in the process. See id. Thus, in Wallace, the First Circuit did not directly confront the question of when to consider proceedings to have commenced; the court faced the question whether retroactivity is appropriate in circumstances where aliens may have relied on a "Notice of Exclusion Proceedings." In Alanis-Bustamante v. Reno, the Eleventh Circuit adopted the First Circuit's determination in the context of sec. 440(d) retroactivity analysis and also based its conclusions on the reasonable reliance of aliens. 201 F.3d 1303, 1309-10 (11th Cir. 2000). In these cases, the courts concluded that the relevant inquiry lay not in when proceedings actually commenced, but when the reliance interests of aliens should be considered for the purposes of determining whether sec. 440(d) should be retroactively applied.

In LaGuerre and Turkhan II, we acknowledged the importance of an alien's reliance interests, but we reached the opposite conclusion on the question whether sec. 440(d) should be applied

retroactively. We concluded that criminal aliens rarely relied on sec. 212(c) waivers in such a way that retroactive application of the statute would "pull the rug out from under [them]." LaGuerre, 164 F.3d at 1041; see also Turkhan II, 188 F.3d at 827. We believe that unless criminal aliens rely on the availability of sec. 212(c) discretionary waiver to the extent that they might have "decided not to commit drug crimes, or . . . resisted convictions more vigorously," see LaGuerre, 164 F.3d at 1041, sec. 440(d) primarily affects the jurisdictional or procedural rights of aliens. For this reason, the provision could be applied retroactively unless an alien actually had conceded deportability despite a colorable defense to deportability. See id. Because we require actual reliance on sec. 212(c), rather than a mere reasonable expectation of reliance, see id., we do not consider whether an alien may have reasonably relied on proceedings as "pending" in consideration of when proceedings have commenced. Moreover, we do not face a question of retroactivity today. Instead, we must decide at what point proceedings against a criminal alien commence. On this limited question, we receive no guidance from the cases cited by Morales-Ramirez.

The regulations cited by the government, 8 C.F.R. sec.sec. 3.14 and 240.30, indicate that proceedings have not commenced until a charging document has been filed in immigration court. Congress has explicitly restricted our ability to review the decision by the Attorney General's delegates to commence proceedings, see 8 U.S.C. sec. 1252(g), so our review is limited to the question whether this discretion to commence proceedings empowered the Attorney General to issue regulations on when proceedings must be adjudged to have commenced. Morales-Ramirez does not question whether the Attorney General had the appropriate discretion to promulgate these regulations, and owing to the deference that courts generally show to regulations of procedural rules which govern administrative practice, see, e.g., Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 843-44 (1984), we do not seriously entertain this question either. The purpose of the filing requirement is to allow immigration courts to manage the vast number of cases that are litigated before them each year. Allowing proceedings to commence at whatever point the INS decides to serve a charging document on an alien would frustrate this purpose and further ensnarl the bureaucratic web of immigration proceedings. Morales-Ramirez instead attempts to analogize his case to Singh, in which the alien who sought waiver from exclusion was prevented from applying for relief because of the untimely dismissal of

his case, which ultimately was reinstated after the 1996 amendments to the INA. Singh, 180 F.3d at 507.

Singh presented an unusual case in which the alien's deportation hearing was clearly "pending" during the period before the passage of AEDPA and IIRIRA, even if actual proceedings in that case had not yet been re-calendared. Morales-Ramirez presents us with no unusual circumstances that could lead us to conclude that his claim was "pending" prior to the commencement of proceedings as measured by 8 C.F.R. sec. 240.30. He was served with a "Notice of Exclusion Proceedings" in 1993, and in the same year, the INS obtained a warrant of detainer to ensure that he be returned to INS custody on release from his period of federal incarceration. However, during the period of his incarceration, Morales-Ramirez made no effort, unlike the petitioner in Singh, to apply for discretionary waiver under sec. 212(c), and the INS made no effort to initiate proceedings against him. Morales-Ramirez presents no arguments or evidence that he relied on sec. 212(c); he simply claims that failing to commence proceedings at the appropriate time cost him the opportunity to apply for discretionary waiver. We agree that the failure to commence proceedings cost him the opportunity to apply for waiver, but we fail to perceive a protected liberty or property interest at stake in the INS's discretionary decision when to commence proceedings. Lacking any protected liberty or property interest, Morales-Ramirez cannot meet the threshold test to establish a due process violation. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Garcia v. INS, 7 F.3d 1320, 1326 (7th Cir. 1993) (finding asylum claimants' due process claim fails because claimants have no protected interest in asylum hearing when the decision to grant asylum is at the discretion of the Attorney General). We find that proceedings against Morales-Ramirez did not commence until the INS filed the appropriate charging document with the immigration court.

The INS did not file the appropriate charging document with the immigration court until after April 1, 1997. Therefore, exclusion proceedings were not "pending" against Morales-Ramirez at the time that the relevant provisions of IIRIRA came into force. Because his case was not "pending" before April 1, 1997, Morales-Ramirez had no protected interest in retaining the ability guaranteed by sec. 212(c) to apply for discretionary waiver of exclusion. For this reason, the immigration court did not violate Morales-Ramirez's due process rights by denying his motion to terminate removal proceedings and commence exclusion proceedings. Morales-Ramirez

does not raise any substantial constitutional issues regarding the decision of the Attorney General to issue an order of removal against him. Because his claim fails to present any substantial constitutional claims, we lack subject matter jurisdiction to review his claim.

III.  Conclusion

Under LaGuerre, the district court lacked subject matter jurisdiction over Morales-Ramirez's petition for writ of habeas corpus. In addition, Morales-Ramirez has not stated a claim that implicates any constitutional rights, so we also lack subject-matter jurisdiction to review it. For these reasons, the case is DISMISSED.

/1 In considering whether Morales-Ramirez states a substantial constitutional claim, we need not assert jurisdiction to hear his claim. Instead, we merely assert jurisdiction to consider whether we have jurisdiction to hear his claim. See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999); Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997).