THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ABDULAMID MEHMEDOSKI, Defendant-Appellant.

Second District   No. 2—89—1268

Opinion filed December 31, 1990.

Robert Steven Wilson, of Sycamore, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Abdulamid Mehmedoski, appeals from an order of the circuit court of Du Page County denying his petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). Defendant contends that the trial court erred in finding that his guilty pleas were voluntary.

Defendant was charged by indictment with two counts of unlawful

possession of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)), two counts of unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(a)(2), (b)(2)), and two counts of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(a)(2), (b)(2)). The case proceeded to a jury trial. During trial, the court was informed that pursuant to negotiations with the State, defendant wished to enter pleas of guilty to certain charges. Defendant agreed to plead guilty to one count of possession, one count of unlawful delivery, and one count of possession with intent to deliver, and the State agreed to nol-pros the remaining charges. The trial court accepted the pleas and, pursuant to the agreement, sentenced defendant to one year of conditional discharge and 180 days in the county jail for delivery and for possession with intent to deliver, and to one year in the Department of Corrections for possession.

Defendant subsequently filed a petition for post-conviction relief contending that his pleas were not voluntary. He alleged that, due to his limited knowledge of English, he did not understand such terms as "waiver," "voluntary plea," and "coercion." He also alleged that he did not receive the effective assistance of counsel because he is a resident alien in the United States and his attorney had not advised him of the consequences of guilty pleas on his immigration status and of the fact that he could be deported "without bail." He also alleged that he had not wanted to plead guilty but "thought he had no other choice." At the time of the post-conviction hearing, defendant was in the custody of the Immigration and Naturalization Service (INS).

At the post-conviction hearing, defendant's trial attorney, Robert Novelle, testified that at the time the pleas were entered he knew that defendant was a resident alien subject to deportation and that the INS was actively trying to deport defendant because of this case and another criminal case in Cook County. Novelle said that he and defendant had discussed defendant's possible deportation and that defendant was well aware of the fact that if the case resulted in a conviction he would be vulnerable to deportation. Novelle advised defendant that deportation was not negotiable, that the INS would try to deport him, and that he should anticipate deportation. He also told defendant that he had a right to a hearing on the deportation matter. Defendant asked Novelle to defend him in the deportation proceedings, but Novelle declined and advised him to get an attorney experienced in immigration law. Novelle did not know that defendant could be held without bond by the INS, and he and defendant never discussed "bondability in the deportation case."

According to Novelle, INS agents were present in the courtroom on the day defendant entered his pleas just as they were present during the

Cook County proceedings. They agreed to "hold off doing anything" until defendant surrendered to the State to begin serving his sentence, and Novelle advised defendant of that fact.

Concerning defendant's language skills, Novelle testified that he "never had trouble with [defendant] understanding anything that [he] talked to him about."

Novelle said that he had not made the plea decision for defendant and that he never told defendant that he had to plead guilty.

Defendant testified that he is Albanian, that he entered the United States in 1975, and that he has a "green card." He said that he was forced to plead guilty. Novelle told him that if he did not plead guilty he would be put in jail "for a long time," but if he did plead guilty he would only serve 30 days in the county jail. The lawyers begged him to plead guilty; he thought they were "going to kill [him]." He was scared, and he did not know what was going on. He said that while the judge was talking to him at the guilty plea hearing he watched his lawyer; when his lawyer would nod to him, defendant would say yes to the judge.

Defendant said that prior to pleading guilty Novelle never discussed the consequences of such a plea on his immigration status. Defendant was arrested by the INS on September 5, 1989, and he had been in their custody ever since. He had a hearing before an immigration judge who told him that he could not be released on bond because he pleaded guilty to a drug offense; a judge also told him that if he appealed deportation he could be incarcerated for years during the appeal process.

The trial court found that defendant's pleas were voluntary and denied defendant's petition for post-conviction relief. Defendant appeals.

On appeal, defendant contends that he was denied the effective assistance of counsel and his guilty pleas were therefore involuntary, because his attorney failed to inform him of the possible deportation consequences of his guilty pleas.

■■ ■ To prevail on an ineffective assistance of counsel claim, a defendant must establish (1) that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) In the context of a guilty plea, the first part of the *Strickland* test is whether counsel's advice was within the range of competence demanded of attorneys in criminal cases; the second part of the test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process and requires that the defendant show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart* (1985), 474 U.S. 52, 56, 58-59, 88 L. Ed. 2d 203, 208, 210, 106 S. Ct. 366, 369, 370; *People v. Miranda* (1989), 184 Ill. App. 3d 718, 722.

■ An attorney's representation falls outside the range of competence demanded of attorneys in criminal cases if, knowing that his client is an alien, the attorney fails to inform the client of the possible deportation consequences of a guilty plea. (*People v. Padilla* (1986), 151 Ill. App. 3d 297, 303.) In this case, the evidence is conflicting concerning whether Novelle informed defendant of the possibility of deportation. Novelle said that defendant was aware that a conviction would make him vulnerable to deportation and that he advised defendant that the INS would try to deport him and that defendant should anticipate deportation. Defendant said Novelle never discussed the consequences of a guilty plea on his immigration status.

■ Where evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact who heard the testimony. (*People v. Davenport* (1988), 176 Ill. App. 3d 142, 145.) The trial judge clearly believed that Novelle had advised defendant of the possibility of deportation. In ruling on the post-conviction petition, the trial court said, "[D]efendant knew his immigration status, his attorney knew his immigration status and explained everything to the defendant." The trial court's conclusion was supported by Novelle's testimony and will not be disturbed on review.

Defendant takes the argument a step further, however, and suggests that his attorney's admitted failure to discuss the fact that defendant might be held without bond by the INS for a protracted period of time during deportation proceedings, including any appeals, rendered his assistance ineffective.

■■ Defense counsel has a responsibility to advise an accused of the collateral consequences of a plea of guilty; the consequence of deportation has been held to be collateral. (*People v. Correa* (1985), 108 Ill. 2d 541, 550.) Defendant is urging that his attorney's failure to advise him of the incidental consequences of a deportation proceeding rendered his assistance ineffective. We disagree.

Our courts have required defense attorneys to advise their clients of the possible deportation consequences of their guilty pleas because deportation, although collateral, is a drastic consequence; in most cases this collateral consequence is more severe than the penalty imposed by the court in response to the plea. (*Correa*, 108 Ill. 2d at 550-51.) The possibility of deportation may be the most important consideration for a defendant in deciding whether to enter a guilty plea. On the other hand,

the possibility of detention by the INS during the deportation proceedings does not rise to that level of importance.

Moreover, the practical effect of a rule which would require attorneys to inform their clients of the incidents and collateral consequences of deportation proceedings would be to require attorneys in criminal proceedings to have knowledge and expertise in the intricacies of immigration law and procedure. Such a rule would create an unwarranted burden, and we decline to adopt it.

Defendant also contends that he was not properly admonished pursuant to Supreme Court Rule 402(b) (107 Ill. 2d R. 402(b)). Specifically, defendant contends that, when the court asked defendant whether the guilty pleas were freely and voluntarily given, defendant was not allowed to answer, and the trial court did not ask defendant whether threats, force or promises were used to obtain the plea. As relevant here, Rule 402(b) states that the trial court shall not accept a plea of guilty without first determining that the plea is voluntary and whether any force, threats or promises, other than the plea agreement itself, were used to obtain the plea. 107 Ill. 2d R. 402(b).

■ At the guilty plea hearing, the assistant State's Attorney informed the court of the terms of the plea negotiation, and the court asked defendant whether there was anything about the statement that he did not understand; defendant said that he understood. The court asked defendant whether he agreed with the terms; defendant said that he agreed. The following exchange then occurred:

"THE COURT: Are you doing this freely and voluntarily; you have decided to do this on your own after advice of counsel?

DEFENDANT MEHMEDOSKI: We talk together and he just advise and I agree.

\* \* \*

THE COURT: You agreed to it?

DEFENDANT MEHMEDOSKI: Yes."

The record makes it clear that the court personally questioned defendant in open court concerning whether the plea was free and voluntary. Contrary to defendant's assertion, defendant was permitted to respond to the question, and he responded affirmatively. While we agree that the court's question did not track the exact language of Rule 402(b), the trial court is not required to parrot the literal language of the rule. (See *People v. English* (1976), 42 Ill. App. 3d 958, 961.) Substantial, not literal, compliance with Rule 402 is all that is required. (*People v. Woods* (1985), 134 Ill. App. 3d 294, 300.) Substantial compliance means such compliance as will assure that the beneficial effect of the rule will be achieved. (*People v. Baker* (1985), 133 Ill. App. 3d 620, 622.) The trial

court substantially complied with the rule.

In this same vein, defendant also contends that his guilty pleas were not voluntary because he "was fearful that he would be killed if he did not plead guilty." At the post-conviction hearing defendant testified as follows:

> "[My attorney] told me—I say, why you make me to plead guilty? They used to beg me. And I say, no, I'm not. They say, I'll put you in jail for a long time. And I used to scare. I never in jail before.
>
> * * *
>
> I used to cry. Two days they beg me.
>
> The third day, the jury, I don't have no choice. I thought they going to kill me. I don't know what's going on."

Defendant never offered a factual basis for his alleged belief that someone, presumably his attorney, would do him harm if he did not plead guilty. He did not testify to acts of violence, verbal threats of violence or threatening gestures directed against him, although he had the opportunity at the post-conviction hearing to offer such testimony. Defendant bears the burden of demonstrating that his plea was coerced, and defendant did not meet that burden on this issue.

Finally, defendant contends that he does not understand English very well and, consequently, he did not understand the court proceedings. In addressing this issue, the trial court found that "defendant understood and was not unaware of what the proceedings were all about." The trial court had heard defendant's responses to the guilty plea admonishments, had heard an hour-long tape of negotiations between defendant and an agent of the Bureau of Alcohol, Tobacco and Firearms, and had heard defendant testify at the post-conviction hearing. The trial court was in the best position to determine defendant's ability to understand and communicate in English and to understand the proceedings. The trial court concluded that defendant did understand, and nothing in the record compels an opposite conclusion. (See *People v. Vitale* (1954), 3 Ill. 2d 99, 103-04.) We would note that at the post-conviction hearing, held at defendant's behest in part to establish that he did not understand English very well, defendant did not use an interpreter.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.