In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3243

Charles Jideonwo,

Petitioner,

v.

Immigration and Naturalization Service,

Respondent.


Petition for Review of an Order of the
Board of Immigration Appeals.
No. A23-147-139.


Argued May 19, 2000--Decided August 23, 2000


   Before Flaum, Chief Judge, and Manion and Williams,
Circuit Judges.

   Flaum, Chief Judge.  Charles Jideonwo appeals the
Board of Immigration Appeals' ("BIA") affirmance
of an Immigration Judge's ("IJ") determination
that Jideonwo is ineligible to receive
discretionary relief under former sec. 212(c) of
the Immigration and Naturalization Act ("INA"),
8 U.S.C. sec. 1182(c) (1994). For the reasons
stated herein, we reverse the BIA's decision and
remand this case to the IJ for further
proceedings.

I.   BACKGROUND

   In 1980, Charles Jideonwo, a native and citizen
of Nigeria, was admitted to the United States on
a non-immigrant student visa. On November 18,
1981, he became a lawful permanent resident of
the United States based on his marriage to a
United States citizen, to whom he is still
married and with whom he has a daughter.

   On December 16, 1994, Jideonwo pled guilty to
one count of conspiracy to possess with intent to
distribute heroin in violation of 21 U.S.C. sec.
846. Jideonwo's sentence was the subject of
considerable negotiation between the government
and Jideonwo's attorney. During the negotiations,
Jideonwo expressed his concern that he receive a
sentence of less than five years in prison so

that he would remain eligible for a discretionary waiver of deportation under sec. 212(c) of the INA. In the end, Jideonwo received a sentence of four years and eleven months, which is a considerable downward departure from the sentencing range for the crime to which he pled guilty. To fulfill the terms of his plea agreement, Jideonwo provided his assistance and that of his family in a federal drug investigation.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act"), Pub. L. No. 104-132, 110 Stat. 1214, went into effect. Section 440(d) of that Act precludes eligibility for sec. 212(c) waivers to individuals who have been convicted of aggravated felonies. The drug charge to which Jideonwo pled guilty is defined as an aggravated felony for purposes of this provision. See 8 U.S.C. sec. 1101(a)(43)(B) (1994); Turkhan v. Perryman, 188 F.3d 814, 817-18 (7th Cir. 1999)./1

On August 6, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC") against Jideonwo, requesting that he provide a reason why he should not be deported under sec. 241(a)(2)(A)(iii) of the INA, 8 U.S.C. sec. 1252(a)(2)(A) (1996), which requires the deportation of persons convicted of crimes such as Jideonwo's drug conviction. Pursuant to the OSC, Jideonwo was brought before an IJ, where he conceded deportability but argued that he should receive a waiver of deportation under sec. 212(c) of the INA. The IJ concluded that AEDPA's sec. 440(d) applied retroactively to Jideonwo so that his drug conviction rendered him ineligible to receive a sec. 212(c) waiver. On October 7, 1998, the IJ ordered Jideonwo deported, and on August 5, 1999, the BIA summarily affirmed the IJ's decision. Jideonwo now appeals.

II.  DISCUSSION

At the time of Jideonwo's guilty plea in 1994, sec. 212(c) of the INA conferred upon the Attorney General the authority to grant discretionary waivers of deportation for equitable reasons to resident aliens who had lawfully resided in the United States for at least seven years. See 8 U.S.C. sec. 1182(c) (1994); Reyes-Hernandez v. INS, 89 F.3d 490, 491 (7th Cir. 1996). In 1996, Congress passed AEDPA, and sec. 440(d) of that Act amended sec. 212(c) of the INA to make criminal aliens who had been convicted of aggravated felonies, such as the drug felony to which Jideonwo pled guilty, ineligible to receive a discretionary waiver. See Turkhan, 188 F.3d at 824. Jideonwo argues that

because he pled guilty partially in reliance on his eligibility to receive a sec. 212(c) waiver, retroactively applying the provisions of AEDPA's sec. 440(d) in his case violates his rights under the Due Process Clause./2

A.  Jurisdiction

The government contends that sec. 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") limits our jurisdiction over appeals from BIA decisions such that we do not have jurisdiction to consider Jideonwo's claim./3 It is uncontested that we at least have jurisdiction over Jideonwo's claim to determine whether we have jurisdiction to consider and resolve it. See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999); Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997) ("[A] court has jurisdiction to determine whether it has jurisdiction."), disapproved on other grounds by Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999). In making this determination, we do not defer to the INS's interpretation of IIRIRA or its conclusions on this issue. See INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987); Yang, 109 F.3d at 1192 ("[A]pplication of a review-preclusion statute does not depend on the agency's findings.").

In LaGuerre v. Reno, we concluded that the review-limiting provision contained in sec. 440(a) of AEDPA,/4 which is substantially similar to the IIRIRA provision at issue here, see Musto v. Perryman, 193 F.3d 888, 891 (7th Cir. 1999), left open the opportunity for deportees to bring constitutional issues directly before the courts of appeals. 164 F.3d 1035, 1040 (7th Cir. 1998). We based this conclusion on our determination that "[a]dministrative agencies, although they may consider constitutional claims, lack the authority to deal with them dispositively; the final say on constitutional matters rests with the courts." Singh v. Reno, 182 F.3d 504, 510 (7th Cir. 1999); see also Turkhan, 188 F.3d at 823. We determined that leaving the "safety valve" of direct appellate review open effectuates Congress's intent to curtail judicial review of final deportation orders of convicted felons while enabling "judicial correction of bizarre miscarriages of justice." LaGuerre, 164 F.3d at 1040. In Singh, we applied this conclusion to the jurisdiction-limiting provisions contained in sec. 309(c)(4)(G) of IIRIRA. See Singh, 182 F.3d at 508 n.3 & 510.

The government contends that Jideonwo's claim

that sec. 440(d) should not be applied retroactively in his case presents only an issue of statutory interpretation, and not a question of constitutional dimensions, so that we do not have jurisdiction to hear it. However, as a permanent resident alien, Jideonwo has the right to receive due process of law before he may be removed or deported from the United States. See Yang, 109 F.3d at 1196 ("[A]liens who have lawfully entered the United States are entitled to due process of law before they may be deported or removed.") (citing Landon v. Plasencia, 459 U.S. 21, 32-33 (1982)); Batanic v. INS, 12 F.3d 662, 666 (7th Cir. 1993). Therefore, if Jideonwo's claim is cognizable under the Due Process Clause, we have jurisdiction to hear it under our holdings in LaGuerre and Singh.

The Supreme Court has held that applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. See Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 716 (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. See id. at 720; see also Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation."). Retrospective changes in INS procedure have been found to violate the due process rights of affected aliens. For example, in Accardi v. Shaughnessy, the Supreme Court held that retroactively changing a procedure for granting relief from deportation from one of discretion to one of predetermined results violated the Due Process Clause where it took away a procedure to which the alien-petitioner previously had a right prescribed by statute. 347 U.S. 260, 266-68 (1954); see also Tasios v. Reno, 204 F.3d 544, 552 (4th Cir. 2000). Similarly, in Reyes-Hernandez, we held that retroactive application of sec. 440(d) to an alien who had conceded a colorable defense to deportability in reliance on being considered for sec. 212(c) relief violated the alien's due process rights. 89 F.3d at 493; see Musto, 193 F.3d at 891.

In this case, Jideonwo's assertion that applying sec. 440(d) retroactively to him would violate his due process rights by taking away a procedure to which he previously had a right granted by statute is a cognizable claim under the Due Process Clause. See Brownell v. We Shung, 352 U.S. 180, 182 n.1 (1956) ("[D]ue process has been held in cases similar in facts to the [immigration case] here involved to include a fair hearing as well as conformity to statutory grounds."); Torres v. INS, 144 F.3d 472, 474

(1998) (noting that an alien has an interest in the immigration procedures that Congress has chosen to provide that is protected by the Due Process Clause); see also Kopec v. City of Elmhurst, 193 F.3d 894, 904 n.7 (7th Cir. 1999) (noting that the "judicial default" rules employed when determining whether a statute should be applied retroactively include the "manifest injustice" test of constitutionality under the Due Process Clause). Therefore, under the holdings of LaGuerre, 164 F.3d at 1040, and Singh, 182 F.3d at 509, we have jurisdiction to consider Jideonwo's constitutional due process claim./5

   B. Retroactive Application of Section 212(c) to Plea Bargains

   Because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly," there is a presumption against retroactive application of new laws absent a clear congressional intent that the law should be applied to past conduct. Landgraf, 511 U.S. at 265; see also LaGuerre, 164 F.3d at 1041; Reyes-Hernandez, 89 F.3d at 492. A statute has a retroactive effect where "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280. To determine whether a statute should be applied retroactively, we look first to the statute's language and context to determine whether Congress has prescribed the statute's temporal scope. Where Congress "has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits," we will not ordinarily disturb the conclusion it has reached. Id. at 272-73; see Deck v. Peter Romein's Sons, Inc., 109 F.3d 383, 387 (7th Cir. 1997) (noting that even where Congress has clearly expressed its intent that a statute apply retroactively, the statute must still satisfy the requirements of the Due Process Clause). However, when congressional intent is unclear, we consider whether the statute "attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70. If we determine that the statute prescribes new consequences, we will not apply the statute retroactively. See id. Mere procedural changes that effect only secondary rather than primary conduct are generally considered not to have retroactive effect. See Landgraf, 511 U.S. at 275; Reyes-Hernandez, 89 F.3d at 492. However, when a procedural change

does "disturb reasonable expectations," the presumption against retroactive application of the new procedures applies. See LaGuerre, 164 F.3d at 1041; see also Chew Heong v. United States, 112 U.S. 536, 559-60 (1884) (declining to give retroactive effect to a new immigration procedure requiring certification before a Chinese alien who had left the country could return where the petitioner had left the country before the passage of the act).

Since AEDPA became effective on April 24, 1996, there has been considerable debate concerning the retroactive application of its provisions. See, e.g., Lindh v. Murphy, 521 U.S. 320 (1997); LaGuerre, 164 F.3d 1035; Henderson v. INS, 157 F.3d 106 (2d Cir. 1998); Scheidemann v. INS, 83 F.3d 1517 (3d Cir. 1996); Campos v. INS, 16 F.3d 118 (6th Cir. 1994). Some sections of AEDPA contain explicit statements that they are to apply either prospectively, see, e.g., sec.sec. 421(b), 435(b), 440(f), or retroactively, see sec.sec. 401(f), 413(g). However, sec. 440(d) contains no such explicit language. In LaGuerre, we concluded that Congress's intent with regard to the retroactive application of this section is ambiguous. 164 F.3d at 1040-41; see also Turkhan, 188 F.3d at 825-26. As a result, we have found that "AEDPA sec. 440(d) could operate in either fashion depending on the particular circumstances of the case." Turkhan, 188 F.3d at 826. Therefore, we examine the specific circumstances in which the section is being applied to determine whether, in that instance, the section attaches new legal consequences to past conduct.

In Reyes-Hernandez, we concluded that sec. 440(d) would have a retroactive effect if it were used to bar eligibility for discretionary relief to aliens who had a colorable defense to deportation but who conceded deportability in reliance on the possibility of receiving sec. 212(c) discretionary relief. 89 F.3d at 492-93. Absent express language calling for retroactive application, we declined to ascribe the "ignoble intention" to Congress of "mousetrapping" aliens into conceding deportability in reliance on being eligible for a discretionary waiver and then removing this type of relief after the concession had been made. Id. Thus, we held that sec. 440(d) did not apply retroactively in this situation. Id. We reached a similar conclusion in Burris v. Parke, where we held that application of AEDPA's rule precluding successive habeas petitions did not apply retroactively because it would attach new legal consequences to the filing of two separate petitions, thereby "mousetrapping" a defendant who had relied on the less stringent "abuse of the writ" standard when making his deliberate strategic decision to file two habeas

petitions rather than one. 95 F.3d 465, 468-69 (7th Cir. 1996). However, in LaGuerre, we concluded that sec. 440(d) does apply retroactively to aliens convicted of crimes that were committed before AEDPA's date of enactment. 164 F.3d at 1041. We based this conclusion on the rationale that "[i]t would border on the absurd to argue that these aliens might have decided not to commit drug crimes" had they known they would become ineligible to receive discretionary relief from deportation. Id. Therefore, we determined that removing eligibility for discretionary relief in this circumstance would not attach a new legal consequence to the decision to engage in past conduct.

In this case, there is evidence that Jideonwo reached a plea agreement with the government at least in part relying on the availability of relief from deportation under sec. 212(c). The length of Jideonwo's sentence--four years and eleven months--is virtually the longest sentence he could have received while retaining his eligibility for a discretionary waiver. In addition, this sentence is a considerable downward departure from the typical sentencing range for the crime to which Jideonwo pled guilty. Furthermore, there were lengthy negotiations between Jideonwo and the government and the IJ found that "the whole point of the plea negotiations in [Jideonwo's] criminal case [was] that he got less than five years to avoid what would have been a statutory bar on 212(c) relief." See Admin. Rec. (Matter of Jideonwo No. A23 147 139) at 61. Jideonwo argues that since he relied on the availability of sec. 212(c) relief in making his decision to plead guilty, AEDPA's sec. 440(d) should not be applied retroactively to him because it would alter the legal consequences of his plea. Three of our sister circuits agree with this position, see Mattis v. Reno, 212 F.3d 31, 38-40 (1st Cir. 2000); Tasios v. Reno, 204 F.3d 544, 549 (4th Cir. 2000); Magana-Pizano v. INS, 200 F.3d 603, 613 (9th Cir. 1999),/6 and we now consider its merits.

A guilty plea involves the waiver of several substantial constitutional rights. See Boykin v. Alabama, 395 U.S. 238, 243 (1969) (noting that when a defendant pleads guilty he waives rights guaranteed by the Fifth, Sixth and Fourteenth Amendments); United States v. Fernandez, 205 F.3d 1020, 1024 (7th Cir. 2000). As a result, courts must use the "utmost solicitude" to ensure that the accused "has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 243-44. A statute enacted after a plea bargain has been reached that changes the consequences of that bargain may have an impermissible retroactive effect if it attaches

new legal consequences to the accused's decision to plead guilty. Cf. Lynce v. Mathis, 519 U.S. 433, 440 (1997) ("In both the civil and criminal context, the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects.").

The decision to plead guilty may involve considerations other than the accused's consciousness of guilt for the crime charged. See North Carolina v. Alford, 400 U.S. 25, 33 (1970) (holding that a guilty plea is not inconsistent with a claim of innocence because "reasons other than the fact that he is guilty may induce a defendant to so plead") (quotation and citations omitted); see also Politte v. United States, 852 F.2d 924, 930-31 (7th Cir. 1988) (holding that a "calculated" plea bargain that includes a benefit for a third party is voluntary and constitutional). While we have previously stated that a person's decision to commit a crime is unlikely to be influenced by the consequences of his criminal act on the availability of a discretionary waiver of deportation, see LaGuerre, 164 F.3d at 1041, decisions made during the plea bargaining process may be affected by the immigration consequences of the plea, see Magana-Pizano, 200 F.3d at 612 ("That an alien charged with a crime involving controlled substances would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented."). In recognition of this fact, many states have found that it is a breach of professional responsibility for a defense attorney to fail to discuss the immigration consequences of a plea agreement with a criminal defendant. See, e.g., Williams v. Indiana, 641 N.E.2d 44, 48-49 (Ind.App. 1994); People v. Mehmedoski, 565 N.E.2d 735, 738 (Ill. App. 1990); see also Wis. Stat. 971.08(1)(c) (requiring that state trial courts inform criminal defendants of the federal immigration consequences of a guilty plea). Furthermore, while sec. 212(c) relief is discretionary, waivers of deportation are granted with sufficient frequency that it would not "border on the absurd" for an alien accused of a crime that carries a lengthy sentence to enter into a plea agreement that would preserve his eligibility for this form of relief. See Tasios, 204 F.3d at 551 (noting that in the years preceding the enactment of AEDPA, immigration judges and the BIA granted over half of the sec. 212(c) applications they considered); Reyes-Hernandez, 89 F.3d at 492 (noting that this Court has "on a nontrivial number of occasions vacated the Board's denial of section 212(c) relief and remanded for further proceedings"). Thus, the "mousetrapping" concerns we expressed in Reyes-Hernandez are also present in a situation where

a defendant pleads guilty in reliance on retaining sec. 212(c) eligibility. As in that case, we will not ascribe to Congress the "ignoble" intention of changing the immigration consequences of a plea bargain after an agreement has been reached absent evidence that Congress intended that its statute be applied retroactively./7 We, therefore, conclude that where specific facts demonstrate that an alien pled guilty to an aggravated felony before the enactment of AEDPA and relied, at least in part, on the availability of sec. 212(c) relief in making his decision to so plead, AEDPA's sec. 440(d) cannot be applied retroactively to bar that alien from receiving a discretionary waiver under INA sec. 212(c)./8

In this case, there is significant evidence that the availability of a sec. 212(c) waiver influenced Jideonwo's decision to plead guilty and provide a substantial amount of assistance to the government in order to receive a sentence that would preserve his eligibility for that relief. We conclude that the BIA and the IJ erred in finding that Jideonwo was ineligible to receive a sec. 212(c) waiver and remand this case to the IJ to determine in the first instance whether such a wavier should be granted.

III.  CONCLUSION

For the foregoing reasons, the BIA's decision determining that Jideonwo is ineligible for relief under sec. 212(c) is Reversed, and this case is Remanded to the Immigration Judge for further proceedings consistent with this opinion.

/1 Section 212(c) has since been repealed and replaced by a new form of relief entitled "cancellation of removal," codified under the current sec. 240A(b) of the INA, 8 U.S.C. sec. 1229b. See Turkhan, 188 F.3d at 819 n.4. Like the former sec. 212(c), this section vests the Attorney General with discretion to grant waivers of removal but declares aliens who have been convicted of aggravated felonies ineligible to receive this discretionary relief. See 8 U.S.C. sec. 1229b(a)(3) and (b)(1)(C). This change does not affect our resolution of Jideonwo's appeal.

/2 Because we resolve this appeal on Jideonwo's due process argument, we do not address his second claim that sec. 212(c) relief should be available to him in conjunction with his request for an adjustment of status.

/3 Section 309(c)(4)(G) provides in relevant part:

"there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense [categorized as an aggravated felony] without regard to [the] date of commission."

Jideonwo is covered by the transitional rules provided by IIRIRA, rather than the similar jurisdiction-limiting provision in sec. 440(a) of AEDPA, because he was placed in deportation proceedings prior to April 1, 1997 and his deportation order was issued after October 30, 1996. See IIRIRA sec. 309(c)(1) and (4).

/4 Section 440(a) of AEDPA amended sec. 106 of the INA as follows: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense [classified as an aggravated felony], shall not be subject to review by any court."

/5 Even if the retroactive application of sec. 440(d) were purely an issue of statutory interpretation, we have expressed our doubts that Congress intended for sec. 440(a), or IIRIRA's similar sec. 309(c) (4)(G), to apply to questions that are exclusively legal in nature. See LaGuerre, 164 F.3d at 1041 ("It seems unlikely that Congress would have wanted the Board to have the final word on so pure and fundamental a question of law as when the statute went into effect.").

/6 The Third and Tenth Circuits have taken a contrary approach, finding that sec. 212(c) relief has been eliminated for all deportable aliens identified in AEDPA's sec. 440(d) where deportation proceedings commenced after the passage of AEDPA. See De Sousa v. Reno, 190 F.3d 175, 187 (3d Cir. 1999); Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1150 (10th Cir. 1999).

/7 In addition, we are mindful of our obligation to presume that Congress intended to act consistent with the dictates of the Constitution. See Crowell v. Benson, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."). As noted above, where retroactive application of a statute disturbs settled expectations based on the state of the law upon which a party relied at the time an action was taken such that "manifest injustice" would result, the Due Process Clause prohibits retroactive application of the law. See Bradley, 416 U.S. at 720-21. Absent express language to the contrary, we will not construe

Congress's intent such that it raises doubts about the constitutionality of this statute. See Landgraf, 511 U.S. at 267 n.21 (noting that "[i]n some cases, . . . the interest in avoiding the adjudication of constitutional questions will counsel against a retroactive application").

/8 In Reyes-Hernandez, we held that only aliens who had a "colorable defense to deportation" and relied on the availability of sec. 212(c) relief in conceding deportability could escape retroactive application of AEDPA's sec. 440(d). 89 F.3d at 493. We do not impose a similar requirement that an alien have a colorable defense to the crime charged where he pled guilty in reliance on the availability of sec. 212(c) relief. Unlike in the deportation context, criminal cases involving a guilty plea do not often have a record that is sufficiently developed for a reviewing court to determine the strength of an accused's defense had he exercised his right to go to trial and put the government to its burden of proof beyond a reasonable doubt. Cf. Fernandez, 205 F.3d at 1024 (stating that harmless error analysis involving a guilty plea focuses only on whether the error was likely to affect the defendant's decision to plead guilty); United States v. Cannon, 553 F.2d 1052, 1057 n.7 (7th Cir. 1977) (stating that a court reviewing the validity of a guilty plea does not consider the weight of the evidence against the defendant but only the constitutionality of the plea itself).